SOLMAN DISTRIBUTORS, INC.,
Plaintiff, Appellee,

v.

BROWN–FORMAN CORPORATION,
Defendant, Appellant.

No. 89–1444.

United States Court of Appeals,
First Circuit.

Heard Sept. 8, 1989.

Decided Oct. 24, 1989.

Rehearing and Rehearing En Banc
Denied Nov. 28, 1989.

Jon R. Doyle with whom Michael C. Miller and Doyle & Nelson, Augusta, Me., were on brief, for defendant, appellant.

Jonathan S. Piper with whom Randall B. Weill and Preti, Flaherty, Beliveau & Pachios, Portland, Me., were on brief, for plaintiff, appellee.

Before TORRUELLA, Circuit Judge, ALDRICH and GIBSON,[*] Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

In this diversity action defendant appellant, feeling no twinge from having lost below, has given us a brief containing such didactic assertions as, "The ... decision was fatally flawed;" plaintiff "is simply wrong;" "Both ... contentions are easily refuted;" and "Solman's efforts are fruitless." Its own contentions are correspondingly easily advanced. Defendant, however, has matters just backwards.

The facts are these. In 1984 plaintiff, Solman Distributors, Inc., entered into an agreement with defendant/appellant Brown–Forman Corporation's predecessor in title, California Coolers, Inc., a California

corporation, to be the exclusive distributor of its products in Northern Maine. Defendant, unacceptably, has sought to terminate. According to defendant, "two unambiguous provisions [are] at the heart of this dispute."

> 18. Either party may terminate this Agreement with or without cause at any time by giving the other party thirty (30) days' written notice of termination, except as otherwise provided by law.

> . . . .

> 25. The validity, interpretation, and performance of this Agreement shall be controlled by and construed under the laws of the State of California.

Purporting to act under paragraph 18, defendant gave plaintiff a 30–day notice of termination. The notice asserted no deficiency in plaintiff's conduct or performance, and it is common ground that there was none. Defendant merely stated that economic reasons had caused it to reorganize its distribution system, and that exclusive dealerships such as plaintiff did not fit in. For present purposes it is not disputed that, from defendant's standpoint, this was a sound business decision. Nevertheless, plaintiff rejected the notice and ultimately brought this suit, seeking, inter alia, a declaratory judgment that the agreement was not terminated. On plaintiff's motion for summary judgment, the district court ruled in plaintiff's favor, and defendant appeals.

■ To follow defendant's metaphor, the heart has a fatal block. The final clause of paragraph 18, "except as otherwise provided by law," leads to a Maine statute, Certificate of Approval Holder and Maine Wholesale Licensee Agreement Act, defendant being the former, plaintiff the latter, hereinafter the Act. Former section 668, now Me.Rev.Stat.Ann. tit. 28–A, § 1454 (1988), reads as follows.

> § 1454. Cancellation

> 1. Good cause. Notwithstanding the terms, provisions or conditions of any agreement, no certificate of approval

[*] Of the Eighth Circuit, sitting by designation.

holder may amend, cancel, terminate or refuse to continue or renew any agreement, or cause a wholesale licensee to resign from an agreement, unless good cause can be established or proven for amendment, termination, cancellation, nonrenewal, noncontinuation or causing a resignation. "Good cause" does not include the sale or purchase of a certificate of approval holder. "Good cause" includes, but is not limited to, the following:

    A. Revocation of the wholesale licensee's license to do business in the State;

    B. Bankruptcy or insolvency of the wholesale licensee;

    C. Assignment for the benefit of creditors or similar disposition of the assets of the wholesale licensee; and

    D. Failure by the wholesale licensee to substantially comply, without reasonable excuse or justification, with any reasonable and material requirement imposed upon him by the certificate of approval holder.

For this block, paragraph 25 of the agreement does not provide a by-pass. Former section 676 of the Act, now section 1462, provides, "No certificate of approval holder may require any wholesale licensee to waive compliance with any provisions of this chapter." By accepting California law, paragraph 25 is a precise waiver of Maine law. It is thus forbidden. The short and full answer to defendant's contention that, under the agreement, plaintiff accepted California law is that, in choosing to become a certificate holder, defendant had become bound by the Act's requirements. Section 678 (1464) provides, "The provisions of this chapter apply to agreements ... in existence on September 16, 1979, and those entered into after that date." Because of the Twenty-first Amendment to the Constitution, defendant cannot even claim that the Act was an undue interference with interstate commerce. This is the end of the matter. That a national company should come to this court in disregard of the statute under which it was permitted to do business we find incomprehensible.

In point of fact, the same result obtains on common law principles. While a state may recognize an agreement to apply foreign law, there is an exception when the foreign law would be contrary to local public policy, and the local state has the materially greater interest. Restatement (Second) of Conflicts, §§ 187–88 (1969). *Baybutt Constr. Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914 (Me.1983), *overruled on other grounds, Peerless Ins. Co. v. Brennon*, 564 A.2d 383 (Me.Sup.Jud.Ct. 1989). There is no contrary statute in California. Defendant merely contends the state recognizes that its business has the necessity of "certainty." This is to ignore that there would be a corresponding uncertainty on plaintiff's part. A distributor's uncertainty, its economic livelihood, may readily be thought at far greater risk, having in mind that the certificate holder can always cancel freely if it is not receiving proper performance. *Moore v. Tandy Corp.*, 819 F.2d 820, 824 (7th Cir.1987).

The Maine legislature, in determining public policy, made this clear. "[T]he law is necessary because of the unequal bargaining power of the Certificate Holder as compared to the wholesale licensee." L.D. 776, Statement of Fact (109th Legislature 1979). Defendant's disposition of the legislative history (in a reply brief, after having been given express notice thereof in appellee's brief), by saying, simply, "Of the legislative history, little need be said," seems a bid for the Guinness Book of World Records. Defendant's even surer candidate for fame is a further attempt to read out section 676 (1462), the non-waiver provision. In its brief,

> Absolutely no evidence was submitted that the choice of law provision was anything less than a portion of arms-length negotiation between sophisticated business entities.

In other words, an issue of fact, avoiding summary judgment, exists, viz., that a party possesses business acumen, so that it does not need the afforded statutory support, with the burden on it, no less, to prove that it does need it.

We turn to defendant's contention that its own business needs (emphasized ad nauseam throughout its briefs) constitutes "cause" within section 668 (1454). Defendant concedes that the four listed examples of cause, ante, all relate to deficiency on the part of the wholesaler. Its sole argument that its own "causes" are to be looked to is that this field is introduced by the statutory phrase, " 'Good cause' shall include, *but not be limited to,* the following." That a radically different concept is thus introduced, sub silentio, is contrary to elementary principles of construction. The correct principle is that of *ejusdem generis, see Penobscot Nation v. Stilphen,* 461 A.2d 478, 489 (Me.), *appeal dismissed,* 464 U.S. 923, 104 S.Ct. 323, 78 L.Ed.2d 296 (1983); *Macaulay v. Boston Typographical Union No. 13,* 692 F.2d 201, 204 (1st Cir.1982).

Defendant's only answer to this natural construction, and to the tenor of the Act generally, is to say that the Act saddles it with plaintiff for life. This is to disregard section 671 (1457), *Reasonable Compensation.* Under it, if a certificate holder cancels an agreement without the wholesaler's having furnished cause, it "shall pay the wholesaler reasonable compensation for the value of the wholesaler's business with relationship to the terminated brand or brands." As an overall proposition this is eminently fair to both sides. Defendant's constant quotation of the Maine court's statement in *Eastern of Maine, Inc. v. Vintners Group, Ltd.,* 455 A.2d 936, 942–43 (Me.1983), that the purpose of the Act is to promote "fair business dealings" and not to tip "the scales in favor of the wholesaler," as support for its free right to terminate for cause of its own is an entirely self-serving reading. A certificate holder can wait while the wholesaler, at its effort and expense, may have built up a market for the product, and then cut its feet out from under it although its performance has been exemplary, surely is not "fairness." Rather, it is one-sided; precisely what, most properly, the legislature aimed to prevent.

We have dealt with only some of defendant's frivolous arguments. The appeal is totally unmeritorious, and an unjustifiable burden on the plaintiff and the court. Under paragraph 27 of the agreement the successful party is entitled to attorneys' fees. These, to include reasonable fees in this court, should now be determined by the district court. However, there is to be added to that figure, to remind defendant and the bar that while we have to be patient, we do not have to be forgiving of such an imposition, the sum of $10,000, charged against defendant, plus $5,000 charged against counsel personally. *See Natasha, Inc. v. Evita Marine Charters, Inc.,* 763 F.2d 468, 473 (1st Cir.1985), and cases cited.

*Affirmed.*