971 F.2d 401
 SUTTER HOME WINERY, INC., a California Corporation,
Plaintiff-Counterdefendant-Appellee,
v.
VINTAGE SELECTIONS, LTD., an Arizona Corporation,
Defendant-Counterclaimant-Appellant.
SUTTER HOME WINERY, INC., a California Corporation,
Plaintiff-Counterdefendant-Appellant,
v.
VINTAGE SELECTIONS, LTD., an Arizona Corporation,
Defendant-Counterclaimant-Appellee.
 Nos. 90-16156, 90-16171.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 9, 1991--San Francisco, California.
Opinion May 4, 1992.
Opinion Withdrawn July 31, 1992.
Decided July 31, 1992.
 
 1
 David L. Abney and Mark A. Nadeau, Morrison & Hecker, Phoenix, Ariz., for defendant-appellee-cross-appellant.
 
 
 2
 Joel W. Nomkin, Brown & Bain, Phoenix, Ariz., for plaintiff-appellant-cross-appellee.
 
 
 3
 Appeal from the United States District Court for the District of Arizona.
 
 
 4
 Before: NORRIS and THOMPSON, Circuit Judges, and EZRA, District Judge.*
 
 ORDER
 
 5
 Sutter Home Winery, Inc.'s petition for rehearing is granted. The opinion 963 F.2d 1215, filed May 4, 1992 is withdrawn.OPINION
 
 DAVID A. EZRA, District Judge:
 OVERVIEW
 
 6
 Vintage Selections, Ltd. ("Vintage") appeals the district court's grant of judgment on the pleadings in favor of Sutter Home Winery, Inc. ("Sutter Home") on all claims made by Sutter Home against Vintage in its complaint, and all causes of action alleged by Vintage in its counterclaim. In so ruling, the district court determined that California law would apply based on the choice of law provision in the parties' distributor agreement.
 
 
 7
 Sutter Home cross appeals the district court's denial of its motion for attorney's fees.
 
 BACKGROUND
 
 8
 Sutter Home is a California corporation that sells wine throughout the United States through a network of distributors. Vintage is an Arizona corporation which distributed wine for Sutter Home and other wineries in Arizona. Sutter Home and Vintage had an ongoing business relationship from 1976 through 1989, whereby Vintage was granted the exclusive franchise rights to sell Sutter Home's wine in Arizona.
 
 
 9
 The parties' relationship was based on an oral agreement for the sale of Sutter Home's wine from 1976 through 1985. In 1985, Sutter Home submitted a written distributor agreement to Vintage for its execution. The agreement set forth the terms of the parties' franchise relationship and provided that it formed the entire understanding of the parties with regard to the distributorship. The agreement also provided that: "Except as otherwise required by applicable law, this Agreement shall be governed by the law of the State of California."
 
 
 10
 The distributor agreement was signed by Vintage in June of 1985. Vintage alleges that the agreement was obtained under duress in an unlawful and unconscionable manner and did not modify the parties' pre-existing duties. Despite believing the agreement was unlawful, Vintage alleges it was forced to execute the agreement or risk losing a significant portion of its business. Subsequent extensions of the agreement were executed by Vintage through June 30, 1989.
 
 
 11
 In December, 1988, Sutter Home allegedly began making inordinate demands upon Vintage which went beyond the obligations specified in the distributor agreement, in an attempt to terminate the exclusive distributor arrangement under which the parties had been operating. At the same time that Sutter Home was making these new demands, it was also allegedly collecting Vintage's customer lists and contacting Vintage's competitors in Arizona to discuss the transfer of the distributorship.
 
 
 12
 On April 28, 1989, Sutter Home notified Vintage that it would not further extend the agreement because Vintage had failed to meet the distributor agreement objectives and because irreconcilable differences in marketing philosophy existed between the parties.[1]
 
 
 13
 On October 29, 1989, Sutter Home filed its complaint against Vintage alleging that it shipped certain wine to Vintage during its business relationship, that Vintage refused to pay for same, and that Vintage had an outstanding account balance with Sutter Home of $68,857.97, which amount was due and owing.
 
 
 14
 Vintage responded to the complaint with a verified answer and counterclaim. Vintage admitted that it refused to pay Sutter Home for certain wine ordered and admitted an account balance of $68,857.97; however, Vintage denied that this amount was due and owing to Sutter Home. Vintage also affirmatively alleged that it had validly refused to pay for the wine based on Sutter Home's breach of its obligations to Vintage.
 
 
 15
 Vintage's counterclaim alleges that the termination by Sutter Home was wrongful, made in bad faith and resulted in the loss of approximately $1.5 million to Vintage. Specifically, Vintage's counterclaim alleges violations of (1) Arizona's Spirituous Liquor Franchise Act, A.R.S. § 44-1565 et seq.; (2) acts of unfair competition; (3) violation of Arizona's Consumer Fraud Act, A.R.S. § 44-1522; (4) tortious breach of the implied covenant of good faith and fair dealing; and (5) equitable theories including breach of implied contract, unjust enrichment and promissory estoppel.
 
 
 16
 On March 19, 1990, the district court granted Sutter Home's motion for judgment on the pleadings with regard to all claims in Sutter Home's complaint and all causes of action in Vintage's counterclaim. In so ruling, the court held that the California choice of law provision in the distributor agreement controlled. The district court also denied Sutter Home's application for attorney's fees incurred in connection with its work in obtaining judgment on the pleadings on July 14, 1990. The court certified its March 1990 order a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure on July 17, 1990. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 STANDARD OF REVIEW
 
 17
 We review de novo a grant of judgment on the pleadings, taking all material allegations of the non-moving party as contained in the pleadings as true, and construing the pleadings in the light most favorable to that party. Bagley v. CMC Real Estate Corp., 923 F.2d 758, 760 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1161, 117 L.Ed.2d 409 (1992).
 
 DISCUSSION
 A. Contractual Choice of Law Question
 
 18
 Vintage argues that the district court incorrectly determined that California law applied in ruling on Sutter Home's motions for judgment on the pleadings. Vintage contends that Arizona law should apply, including the provisions of the Arizona Spirituous Liquor Franchise Act, based on several alternate grounds, including the choice of law provision itself, which Vintage claims should be construed to provide for the application of Arizona law to this case. We agree.
 
 
 19
 The Arizona liquor franchise law regulates the commercial relationship between a supplier and wholesaler, where the wholesaler is granted the right to "offer, sell and distribute" within the state of Arizona, the supplier's brands of spirituous liquors. A.R.S. § 44-1565. When this law is applicable to the relationship between the parties, it provides for the termination, renewal or cancellation of the franchise in good faith and for good cause. A.R.S. § 44-1566.[2]
 
 
 20
 Despite the fact that the district court expressly found the Arizona statute applicable to the parties' agreement, the court held that it would not apply the statute because it would not disrupt the parties' intent to be bound by California law as set forth in the distributor agreement.[3]
 
 
 21
 With regard to the choice of law provision, the distributor agreement provides as follows:
 
 
 22
 5. Sutter Home agrees that all of the Products sold to Distributor shall be manufactured, bottled, packaged and labeled in conformity with applicable laws and regulations.
 
 
 23
 6. Distributor's sales and promotion efforts shall always be consistent with the high standards and quality associated with the Products and Sutter Home. Distributor shall conduct its efforts at all times in strict compliance with all applicable local, state and federal laws and regulations....
 
 
 24
 ....
 
 
 25
 12. Except as otherwise required by applicable law, this Agreement shall be governed by the law of the State of California.
 
 
 26
 As set forth above, the phrase "applicable law" is used in three separate paragraphs of the distributor agreement. Vintage states that it understood the phrase, which was used in all three instances, to refer to other applicable state or federal laws and regulations, to mean that Arizona law would apply where applicable. Specifically, Vintage understood this to include application of the Arizona Spirituous Liquor Franchise law.
 
 
 27
 The general rule of contract interpretation is that where a contract is reasonably susceptible to more than one meaning, "that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds." Restatement (Second) of Contracts § 206 (1979). Because the phrase "applicable law" was used no less than three times by Sutter Home in reference to the local law of the state where the agreement had application, this court cannot accept that such language had no intended meaning. The language implies that some other law must be applicable; otherwise, the phrase "except as otherwise required by applicable law" is mere surplusage.
 
 
 28
 Further, the only other applicable law in this case is the Arizona Spirituous Liquor Franchise law.[4] In Solman Distributors, Inc. v. Brown-Forman Corp., 888 F.2d 170 (1st Cir.1989), a California-based national liquor company sought to terminate a Maine liquor franchisee. The distributor agreement between the parties provided that California law was to apply. The agreement also provided that either party could terminate the agreement with or without cause at any time, "except as otherwise provided by law." Id. at 171. The district court applied California law and granted summary judgment for the distributor. On appeal, the First Circuit Court of Appeals reversed.
 
 
 29
 The Court held that the Maine Wholesale Licensee Agreement Act, which provided that terminations of any wholesale license agreement had to be based on good cause, applied in determining whether the distributorship was properly canceled. The Court stated that the choice of law clause in the agreement "except as otherwise provided by law" had to be read in reference to the Maine statute. Although noting that the Maine statute had an anti-waiver provision,[5] the Court stated that the same result would be reached on common law principles for two reasons. First, the court stated that there was no contrary statute in California; further, the court noted that the Maine legislature enacted it's state's liquor franchise act because of the unequal bargaining power of the franchisor as compared to the franchisee, and to allow parties to evade the provisions of the act would frustrate the purpose of the law. Id. at 172.
 
 
 30
 This court finds that the district court erred in not applying Arizona law in this case. The choice of law clause, "except as otherwise required by applicable law," encompassed the law of Arizona, which in this case included the Arizona Spirituous Liquor Franchise law. Further, Sutter Home drafted the distributor agreement, and any ambiguity in the choice of law clause must therefore be construed against it. As such, the Arizona Spirituous Liquor Franchise law is part of the other applicable law agreed upon by the parties in the distributor agreement and should therefore be applied in the instant case.
 
 B. Remaining Questions
 
 31
 Vintage asserted a number of other counterclaims against Sutter Home in addition to its counterclaim under the Arizona Spirituous Liquor Franchise Act. A contractual choice of law analysis is irrelevant to the resolution of these other counterclaims. This is also the case with regard to Sutter Home's contract claim for $68,857.97, we leave that claim for further consideration by the district court when the district court considers Vintage's counterclaim under the Arizona Spirituous Liquor Franchise Act. With regard to Vintage's other counterclaims, however, we affirm the district court's judgment in favor of Sutter Home and against Vintage.
 
 1. Consumer Fraud Act Counterclaim
 
 32
 Arizona's Consumer Fraud Act makes it illegal to commit fraud or deception "in connection with the sale or advertisement of any merchandise." A.R.S. § 44-1522. The clear intent of this provision is to protect unwary buyers from unscrupulous sellers. The basis for Vintage's claim, however, is that Sutter Home deceived it by secretly selling to another distributor the exclusive rights to distribute its wine. Under this scenario, Vintage is not a buyer, nor is it the target of deceptive advertising. Consequently, it cannot maintain an action under Arizona's Consumer Fraud Act.
 
 2. Tort Claims
 
 33
 In addition to alleging violations of Arizona statutory law, Vintage also raises a number of tort law claims including unfair competition and tortious breach of the implied covenant of good faith and fair dealing.
 
 
 34
 As a threshold matter, we must first determine whether Arizona or California law governs Vintage's tort claims. Claims arising in tort are not ordinarily controlled by a contractual choice of law provision. Consolidated Data Terminals v. Applied Digital Data Systems, 708 F.2d 385, 390 n. 3 (9th Cir.1983). Rather, they are decided according to the law of the forum state. Id.
 
 
 35
 Under Arizona law, "courts are required to resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular questions." Bates v. Superior Court, Maricopa County, 156 Ariz. 46, 749 P.2d 1367, 1370 (1988). Courts look to four factors in making this determination: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile of the parties, and (4) the place where the parties' relationship is centered. Id.
 
 
 36
 Applying these factors, it is clear that Arizona has the most significant relationship to "both the occurrence and the parties." Id. Vintage's injury occurred in Arizona, as did the conduct causing this injury. Further, Arizona is both Vintage's domicile and the place where Vintage's relationship with Sutter Home was centered. We therefore apply Arizona law to Vintage's tort claims.
 
 
 37
 Vintage alleged that Sutter Home unfairly competed with other Arizona liquor distributors. In order to maintain an action for unfair competition under Arizona law, Vintage must either show that it was engaged in competitive business with Sutter Home, Lininger v. Desert Lodge, 63 Ariz. 239, 160 P.2d 761, 764 (1945), or that Sutter Home's actions were likely to produce public confusion, Taylor v. Quebedeaux, 26 Ariz. 515, 617 P.2d 23, 24 (1980). Neither situation exists here. Vintage was not in competition with Sutter Home. Lininger, 160 P.2d at 764 (parties must "solicit the same trade" or "solicit the same customers" to be in competition with each other). Nor has Vintage alleged that any public confusion resulted from Sutter Home's conduct. Consequently, judgment on the pleadings was appropriate.
 
 
 38
 The district court also ruled that Vintage could not recover on its claim that Sutter Home tortiously breached the implied covenant of good faith and fair dealing. Arizona courts have never expressly determined whether a plaintiff may sue in tort for an alleged breach of this covenant arising out of distributor or franchise agreement. R.L.M. Dist. Co. v. W.A. Taylor, Inc., 723 F.Supp. 421, 428-29 (D.Ariz.1988). Consequently, we must look to "all available data" to determine how Arizona's highest court would decide this issue. Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 186 (9th Cir.1989), cert. denied, 493 U.S. 1058, 110 S.Ct. 868, 107 L.Ed.2d 952 (1990).
 
 
 39
 Ordinarily, a party claiming breach of an implied covenant is limited to a contract action. Burkons v. Ticor Title Ins. Co. of Cal., 168 Ariz. 345, 813 P.2d 710, 720 (1991). In certain situations, however, "the breach of the implied covenant may provide the basis for imposing tort damages." Id. Arizona courts allow a plaintiff to bring a tort action only where a special relationship exists between the parties arising "from elements of public interest, adhesion, and fiduciary responsibility." Id.
 
 
 40
 In Rawlings v. Apodaca, 151 Ariz. 149, 726 P.2d 565 (1986), the Arizona Supreme Court identified two situations where this "special relationship" exists. First, tort damages are available where "the type of contract involved is one in which the plaintiff seeks something more than commercial advantage or profit from the defendant." Id. 726 P.2d at 575. The paradigm example is an insurance contract in which the insured is contracting primarily for security. Id. Second, tort damages are available where restricting recovery to contract damages would "provide[ ] more of an incentive for breach of the contract than for its performance." Id. at 576.
 
 
 41
 We are faced with neither situation here. Both Vintage and Sutter Home are sophisticated business entities who entered into their relationship intent on earning profits. See Little Oil Co. v. Atlantic Richfield Co., 852 F.2d 441, 447 (9th Cir.1988) (parties' primary motivations for entering into franchise agreement was to make a profit). Vintage has never alleged otherwise.
 
 
 42
 There is also no reason to believe that restricting a distributor's recovery to contract damages would encourage suppliers to routinely breach distributor agreements. The contract measure of damages is adequate to deter suppliers from breaching distributor agreements, just as it is adequate to deter nearly all other breaches between commercial entities. Accordingly, the district court correctly ruled that Arizona law does not recognize a tort action for breach of the implied covenant of good faith and fair dealing between a supplier and a distributor of spirituous liquor.[6]
 
 3. Equitable Claims
 
 43
 Vintage also asserts a number of equitable grounds for relief including unjust enrichment, breach of implied contract and promissory estoppel. Vintage cannot recover on its claims of unjust enrichment and breach of implied contract, however, because Vintage's relationship with Sutter Home was governed by a valid express contract. See Brooks v. Valley Nat'l Bank, 113 Ariz. 169, 548 P.2d 1166, 1171 (1976) ("where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application"); Swanson v. Levy, 509 F.2d 859, 861 (9th Cir.1975) (action under theory of implied contract precluded by existence of express contract governing the particular issue).[7]
 
 
 44
 Vintage is also barred from recovering under its promissory estoppel claim. In its counterclaim, Vintage alleged that it took special efforts to sell Sutter Home wines, to the detriment of its business relationships with other suppliers, in reliance on "the historical conduct of Sutter Home, ... the custom in the industry, ... [and] Sutter Home's expression of good faith and the viability of the ongoing relationship." These are not the type of specific promises which can support an action for promissory estoppel. As a result, the district court was also correct in granting judgment on the pleadings against Vintage on its equitable claims.
 
 
 45
 C. Sutter Home's Cross-Appeal For Attorney's Fees
 
 
 46
 In its cross-appeal, Sutter Home argues that the district court erred in denying its application for attorney's fees in connection with the work it did to obtain judgment in its favor on its complaint and Vintage's counterclaim.[8] Because of our holding that the district court erred in applying California law to Vintage's claim under the Arizona Spirituous Liquor Franchise Act, and because we reverse the judgment in favor of Sutter Home on its complaint, the cross-appeal has become moot.[9]
 
 CONCLUSION
 
 47
 We reverse in part the judgment of the district court in favor of Sutter Home on the contract claim for $68,857.97 and on Vintage's counterclaim under Arizona's Spirituous Liquor Franchise Act, and affirm the district court on the dismissal of the remainder of Vintage's counterclaims. Sutter Home's cross-appeal from the denial of its application for attorney's fees is dismissed as moot. The case is remanded to the district court for proceedings consistent with this opinion.
 
 
 48
 DAVID R. THOMPSON, Circuit Judge, concurring and dissenting:
 
 
 49
 I concur in parts B and C of the majority opinion. Because I believe the choice-of-law provision in the parties' contract requires the application of California law to their contractual disputes, I respectfully dissent from part A.
 
 
 50
 The parties agreed that their distributor agreement would be governed by California law, "[e]xcept as otherwise required by applicable law." The linchpin of this provision is the word "required." By definition this term implies some type of compulsion or force. See, e.g., Webster's Third New International Dictionary 1929 (1986). Thus a precise reading of the provision makes clear that the parties intended California law to control unless Arizona "requires" that its own law be applied.
 
 
 51
 Arizona has not required that its Spirituous Liquor Franchise Act govern the parties' distributor agreement. The Act does not include an anti-waiver provision, nor does it reflect any overriding state policy which would bar the parties from waiving its protections. See San Francisco Sec. Corp. v. Phoenix Motor Co., 25 Ariz. 531, 220 P. 229 (1923) (statutory provisions implicating important public policies cannot be waived). Therefore, as provided by the express terms of the choice-of-law provision, California law should control.
 
 
 52
 Despite the clear language of the choice-of-law provision, the majority theorizes that the parties may have actually intended California law to apply only when the forum state's laws are silent. They argue that this possibility renders the choice-of-law provision ambiguous, thus requiring the application of Arizona law. See Restatement (Second) of Contracts § 206 (1979).
 
 
 53
 No agreement is ever entirely free of ambiguity. There is always the possibility that the parties actually intended a contract term to have an unconventional meaning. However, unless this intention is manifested in some way, the term will be given its generally accepted meaning. Restatement (Second) of Contracts § 202(3)(a) (1079) ("[u]nless a different intention is manifested ... where language has a generally prevailing meaning, it is interpreted in accordance with that meaning"); see also DeCarlo v. MCSA, Inc., 163 Ariz. 23, 785 P.2d 592, 594 (App.1988) (under Arizona law, "a contract that is unambiguous on its face must be construed according to the plain meaning of its terms").
 
 
 54
 There is no indication the parties intended to deviate from the commonly accepted definition of the word "required." The majority contends the use of the phrase "applicable law" in paragraphs five and six of the agreement somehow casts into doubt the meaning of the choice-of-law provision. I disagree. These paragraphs simply require Vintage and Sutter Home to comply with Arizona law in conducting their bottling and promotional activities. They have absolutely no bearing on whether the parties intended California law to govern their contractual disputes.
 
 
 
 *
 The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 Vintage states that when it began distributing Sutter Home's products in Arizona in 1977, Sutter Home's total distribution in Arizona was 100 cases of wine, and its market share was essentially nonexistent. However, at the time Sutter Home terminated the parties' relationship, Sutter Home's total distribution in Arizona was 55,000 cases per year, which accounted for approximately 25% of Vintage's total business revenues. Vintage contends that the increase in Sutter Home's market share was the result of substantial sacrifice by Vintage based on its commitment to Sutter Home which prevented Vintage from undertaking comparable efforts on behalf of other wineries for which it distributed
 
 
 [2]
 A.R.S. § 44-1566 provides:
 A supplier or wholesaler shall not fail to act in good faith in performing or complying with any terms, provisions or conditions of the franchise or in terminating, canceling or not renewing a franchise. Any termination, cancellation or failure to renew shall be done in good faith and for good cause.
 
 
 [3]
 The district court applied section 187(1) of the Restatement (Second) of Conflict of Laws ("Restatement"), which provides that the parties' choice of law shall control "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187(1) (Supp.1988)
 The parties agree that the district court was required to apply Arizona choice of law rules, and that the Arizona courts have relied upon the Restatement in determining which state's laws control the outcome of a case. Lange v. Penn. Mut. Life Ins. Co., 843 F.2d 1175, 1178 (9th Cir.1988).
 
 
 [4]
 Vintage also references the Arizona statutes relating to the Arizona Department of Liquor License and Control, which Vintage understood was included in the other "applicable laws" which were to be complied with. Sutter Home does not dispute that compliance had to be maintained with such other Arizona laws, but disputes the applicability of the Arizona Spirituous Liquor Franchise law
 
 
 [5]
 The Arizona statute does not contain an anti-waiver clause. However, because we find that the choice of law provision did not provide solely for the application of California law, we need not reach the issue of whether the Arizona spirituous liquor law could be waived in an express agreement by the parties
 
 
 [6]
 The vast majority of courts which have considered the issue have also held that franchise and distributor agreements do not give rise to the type of special relationship necessary to maintain a tort action for breach of the implied covenant of good faith and fair dealing. See O'Neal v. Burger Chef Systems, Inc., 860 F.2d 1341, 1349 n. 4 (6th Cir.1988), for a comprehensive list of cases adopting this position
 
 
 [7]
 Vintage argues that the distributor agreement was not valid because it was forced to sign the agreement under duress. We agree with the district court that this argument is untenable. Vintage accepted the benefits of the agreement for almost four years before it sought recession. It has presented no excuse for this delay. Consequently, it is barred from now challenging the validity of the distributor agreement on grounds of duress. See In re Boston Shipyard Corp., 886 F.2d 451, 455 (1st Cir.1989) ("one seeking to repudiate an agreement allegedly entered into under duress must promptly complain of the circumstances under which the document was signed")
 
 
 [8]
 Sutter Home sought attorney's fees as the prevailing party under A.R.S. §§ 12-341.01 and 44-1567(A). Under § 12-341.01, the district court has discretion to award reasonable attorney's fees to a "successful party" in a contract action; section 44-1567 provides that the "prevailing party" in an action brought for violation of the Arizona Spirituous Liquor Franchise Act "shall receive reasonable attorney's fees." Sutter Home also seeks attorney's fees incurred in connection with this appeal under these two statutes
 
 
 [9]
 With the reinstatement of Vintage's counterclaim under the Spirituous Liquor Franchise Act, there is no prevailing party and therefore, this issue is not ripe for determination under § 44-1567(A). Further, the reversal of judgment in favor of Sutter Home on its complaint makes the issue of whether Sutter Home is the successful party in a contract action under § 12-341.01 premature. See Schwartz v. Farmers Ins. Co. of Arizona, 166 Ariz. 33, 800 P.2d 20, 25 (1990) (trial court has discretion to determine who is a successful party entitled to award of attorney fees when there are multiple claims brought with varied success against a defendant and both parties seek award of attorney fees). Such a determination should be made by the district court at the conclusion of the case