**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SCOTT RIGSBY; SCOTT RIGSBY FOUNDATION, INC., | No. 21-16182 |
| *Plaintiffs-Appellants*, | D.C. No. 2:19-cv-05710-MTL |
| v. | |
| GODADDY INC.; GODADDY.COM, LLC; GODADDY OPERATING COMPANY LLC; DESERT NEWCO LLC, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Arizona
Michael T. Liburdi, District Judge, Presiding

Argued and Submitted August 9, 2022
Anchorage, Alaska

Filed February 3, 2023

Before: Sidney R. Thomas, M. Margaret McKeown, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY[*]

### Lanham Act

The panel (1) affirmed the district court's dismissal of an action brought under the Lanham Act by Scott Rigsby and the Scott Rigsby Foundation against GoDaddy Inc. et al., seeking declaratory and injunctive relief including return of the domain name "scottrigsbyfoundation.org;" and (2) dismissed Rigsby's and the Foundation's appeal of an order transferring venue.

When Rigsby and the Foundation failed to pay GoDaddy, a domain name registrar, the renewal fee for scottrigsbyfoundation.org, a third party registered the then-available domain name and used it for a gambling information site.

The panel held that it lacked jurisdiction to review the District Court for the Northern District of Georgia's order transferring the case to the District of Arizona because transfer orders are reviewable only in the circuit of the transferor district court.

The panel held that Rigsby could not satisfy the "use in commerce" requirement of the Lanham Act vis-à-vis GoDaddy because the "use" in question was being carried out by a third-party gambling site, not GoDaddy, and Rigsby therefore did not state a claim under 15 U.S.C. § 1125(a). As to the Lanham Act claim, the panel further held that Rigsby could not overcome GoDaddy's immunity under the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Anticybersquatting Consumer Protection Act, which limits the secondary liability of domain name registrars and registries for the act of registering a domain name. The panel concluded that Rigsby did not plausibly allege that GoDaddy registered, used, or trafficked in his domain name with a bad faith intent to profit, nor did he plausibly allege that GoDaddy's alleged wrongful conduct surpassed mere registration activity.

The panel held that § 230 of the Communications Decency Act, which immunizes providers of interactive computer services against liability arising from content created by third parties, shielded GoDaddy from liability for Rigsby's state-law claims for invasion of privacy, publicity, trade libel, libel, and violations of Arizona's Consumer Fraud Act. The panel held that immunity under § 230 applies when the provider is an interactive computer services, the plaintiff is treating the entity as the publisher or speaker, and the information is provided by another information content provider. Agreeing with other circuits, the panel held that domain name registrars and website hosting companies like GoDaddy fall under the definition of an interactive computer service. In addition, GoDaddy was not a publisher of scottrigsbyfoundation.org, and it was not acting as an information content provider.

Finally, the panel held that Rigsby did not state a claim for injunctive relief or declaratory relief.

**COUNSEL**

Charles M. Dalziel Jr. (argued), Dalziel Law Firm, Marietta, Georgia, for Plaintiff-Appellants.

Harper S. Seldin (argued) and Jeffrey M. Monhait, Cozen O'Connor, Philadelphia, Pennsylvania; Paula L. Zecchini, GoDaddy.com LLC, Kirkland, Washington; for Defendants-Appellees.

**OPINION**

McKEOWN, Circuit Judge:

Scott Rigsby is a physically challenged athlete and motivational speaker who started the Scott Rigsby Foundation and registered the domain name "scottrigsbyfoundation.org" with GoDaddy.com in 2007. When Rigsby and the Foundation failed to pay the annual renewal fee in 2018, allegedly a result of a glitch in GoDaddy.com's billing, a third party registered the then-available domain name. To Rigsby's dismay and his customers' confusion, scottrigsbyfoundation.org became a gambling information site. Rigsby sued GoDaddy.com, LLC and its corporate relatives (collectively, "GoDaddy"), in the Northern District of Georgia for violations of the Lanham Act and various state laws and sought declaratory and injunctive relief including return of the domain name. The Northern District of Georgia transferred the case to the District of Arizona, which dismissed all claims.

Although Rigsby's claims are sympathetic, relief is not available against GoDaddy, which is a domain name registrar. Rigsby cannot satisfy the "use in commerce"

requirement of the Lanham Act vis-à-vis GoDaddy nor can he overcome GoDaddy's immunity under the Anticybersquatting Consumer Protection Act ("ACPA") or the Communications Decency Act ("CDA"). Rigsby's problem lies with the entity that acquired the domain name; his efforts to tag GoDaddy with liability miss the mark.

We affirm dismissal of the complaint against GoDaddy.

## I. BACKGROUND

The Scott Rigsby Foundation, a nonprofit for wounded veterans and other individuals with disabilities, and the Foundation's namesake, Scott Rigsby, a motivational speaker and the first double-leg amputee to complete an Iron Man Triathlon (collectively, "Rigsby"), promote an active lifestyle for all physically challenged individuals. Rigsby registered the domain name scottrigsbyfoundation.org with GoDaddy.com in 2007, but in 2018 Rigsby failed to make a payment to renew the registration due to GoDaddy's billing "glitch." A third party, whom Rigsby refers to as a "hijacker," swooped in and registered the domain with GoDaddy. The website scottrigsbyfoundation.org became "a portal into an online gambling education site." Neither the website nor its new owner is a party to the underlying suit or this appeal.

Rigsby sued GoDaddy in the Northern District of Georgia to reclaim the domain scottrigsbyfoundation.org. The district court transferred the case to the District of Arizona on GoDaddy's motion pursuant to the forum selection clause in GoDaddy.com, LLC's terms of service. Rigsby's Third Amended Complaint includes claims under the Lanham Act and state-law claims for invasion of privacy/publicity, trade libel, and libel. Rigsby also seeks a declaratory judgment regarding ownership of the domain

name.  Finally, Rigsby seeks an injunction under Arizona's Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, requiring GoDaddy to reinstate Rigsby as the owner of scottrigsbyfoundation.org.

The district court dismissed all claims with prejudice. On appeal, Rigsby challenges the dismissal of his claims and the transfer of venue.

## II.  ANALYSIS

### A.  VENUE CHALLENGE

We do not have jurisdiction to review the Northern District of Georgia's transfer order, as transfer orders "are reviewable only in the circuit of the transferor district court." *Posnanski v. Gibney*, 421 F.3d 977, 980 (9th Cir. 2005); *see also, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th 692, 698 (9th Cir. 2022) ("Our case law is clear that we do not have jurisdiction to review the procedural or substantive propriety of the Florida court's transfer order.").  Rigsby's remedy, if any, lies in the Eleventh Circuit.  *See Posnanski*, 421 F.3d at 980–81.

### B.  LANHAM ACT CLAIM

Moving to the claims over which we have jurisdiction, Rigsby first invokes § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), to claim that GoDaddy is "knowingly providing the use of the domain name" in a deceptive way.  This approach is unsuccessful because the "use" in question is being carried out by a third-party gambling site, not GoDaddy.  A claim aimed at the third party cannot be repackaged to assert use by GoDaddy.  Rigsby's claim fails for two reasons: Rigsby does not adequately plead that GoDaddy used Rigsby's mark "in commerce," *see* 15 U.S.C. § 1125(a); and GoDaddy's registrar activity is shielded from

liability under the ACPA because Rigsby has not plausibly alleged that GoDaddy was more than a registrar or that it exhibited "bad faith or reckless disregard," *see* 15 U.S.C. §§ 1125(d)(2)(D)(ii); 1114(2)(D)(iii).

### 1. GoDaddy did not use Rigsby's mark in commerce.

We first consider Rigsby's assertion that he did not have to plead "use" of any "mark" in his Lanham Act claim. Rigsby focuses on the lack of any trademark in his claim, emphasizing that § 1125(a) allows suit completely apart from "marks." Rigsby is keying in on the wrong term. Though Rigsby need not have a registered trademark to bring claims under § 1125(a), the "use in commerce" requirement still holds. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999) ("Such use requirement is firmly established in the case law and, moreover, is embodied in the Lanham Act itself." (citation omitted)). To state a claim under § 1125(a), Rigsby must plausibly allege that GoDaddy "use[d]" Rigsby's domain name "in commerce." 15 U.S.C. § 1125(a)(1).

His efforts fall short. When Rigsby stopped paying for the scottrigsbyfoundation.org domain, a third party purchased it. Rigsby contends that GoDaddy "active[ly] push[ed] out" gambling content through the domain name, but he does not plausibly allege that GoDaddy played a role beyond registration. In "grant[ing] a particular domain name to a registrant," GoDaddy "simply grant[ed] it an address." *Bird v. Parsons*, 289 F.3d 865, 878 (6th Cir. 2002). "The fact that the [third party] can then use its domain name to infringe on the rights of a registered trademark owner does not subject the registrar to liability for trademark infringement or unfair competition." *Id.*

In *Lockheed Martin Corp. v. Network Solutions, Inc.*, we dismissed claims of contributory infringement against the domain name registrar Network Solutions, Inc. ("NSI") because registration of Lockheed Martin's mark was not "use in commerce" under § 1125(a). *See* 194 F.3d 980, 984–85 (9th Cir. 1999). Although registrants had to pay NSI a fee to use its routing service, we explained that "NSI does not supply the domain-name combination any more than the Postal Service supplies a street address by performing the routine service of routing mail." *Id.* We recognized that "[w]here domain names are used to infringe, the infringement does not result from [a registrar's registration activities], but from the registrant's use of the name on a web site . . . in connection with goods or services." *Id.* at 985 (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp. 949, 958 (C.D. Cal 1997)). The registrar's "involvement with the use of domain names d[id] not extend beyond registration." *Id.* The same logic applies here. While *Lockheed Martin* considered a claim for contributory infringement, Rigsby's suit under § 1125(a) is essentially a repackaging of secondary liability claims, targeting the domain registrar directly for the acts of the registrant. *Lockheed Martin*'s reasoning still holds: "infringement does not result from [the registrar's services], but from the registrant's use" of the mark. *See id.* Rigsby has not adequately alleged that GoDaddy "used" his mark, let alone "in commerce," sufficient to state a claim under § 1125(a).

## 2. Rigsby does not plausibly allege that GoDaddy went beyond registration.

In 1999, Congress passed the ACPA, which amended the

Lanham Act to protect against cybersquatting.[1] Anticybersquatting Consumer Protection Act, Pub. L. No. 106–113, § 3001, 113 Stat. 1501, 1501A–545 (1999). Under the ACPA, a person may be civilly liable "if . . . that person . . . has a bad faith intent to profit from that mark" and "registers, traffics in, or uses a [protected] domain name." 15 U.S.C. § 1125(d)(1)(A). "Extending liability to registrars or other third parties who are not cybersquatters, but whose actions may have the effect of aiding such cybersquatting, would expand the range of conduct prohibited by the statute." *Petroliam Nasional Berhad*, 737 F.3d at 550. Prohibited conduct would expand "from a bad faith intent to cybersquat on a trademark to the mere maintenance of a domain name by a registrar, with or without a bad faith intent to profit." *Id.* at 550–51.

As a domain name registrar, GoDaddy is shielded from liability under the ACPA, assuming that its activities do not extend beyond registration. *See id.* at 548 ("GoDaddy.com, Inc. (GoDaddy) is the world's largest domain name registrar, maintaining over 50 million domain names registered by customers around the world."). Congress explained that the ACPA "codif[ies]" existing case law by "limiting the secondary liability of domain name registrars and registries for the act of registration of a domain name." S. Rep. No. 106–140, at 11 (1999) (citing, *inter alia*, *Lockheed Martin*, 985 F. Supp. 949, *aff'd*, 194 F.3d 980 (9th Cir. 1999)); *see*

---

[1] Cybersquatting entails "registering a domain name associated with a protected trademark either to ransom the domain name to the mark holder or to divert business from the mark holder." *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 549 n.3 (9th Cir. 2013) (citing *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005)).

*also Hawes v. Network Sols., Inc.*, 337 F.3d 377, 384 (4th Cir. 2003) ("In creating these causes of action, Congress intended expressly to limit the liability of domain name registrars under the [Lanham] Act as long as the domain name registrars comply with the conditions stated in [the ACPA].").

Rigsby has not plausibly alleged that GoDaddy registered, used, or trafficked in his domain name with a bad faith intent to profit, nor has he plausibly alleged that GoDaddy's allegedly wrongful conduct surpassed mere registration activity. *See* § 1125(d)(1)(A); Rigsby is clearly frustrated that GoDaddy "let some other person or entity register the domain name," but letting a third party purchase an available domain name is standard practice for a domain name registrar. *See InvenTel Prods., LLC v. Li*, 406 F. Supp. 3d 396, 402 (D.N.J. 2019) ("[W]ithout a warning that the specific URL being registered would be used for an illicit purpose, GoDaddy did not have a 'bad faith intent to profit' from the automatic registration of 'www.hdmirrorcambuy.com.'"); *Verizon Cal. Inc. v. OnlineNIC, Inc.*, 647 F. Supp. 2d 1110, 1126 (N.D. Cal. 2009) (noting that the ACPA "exempts a domain name registrar from liability resulting from its registration of domain names for others where the registrar is acting in a purely passive capacity").

Rigsby equates GoDaddy's lack of intervention with active promotion, but GoDaddy "simply could not function as a registrar, or as keeper of the registry, if it had to become entangled in, and bear the expense of, disputes regarding the right of a registrant to use a particular domain name." *Lockheed Martin Corp. v. Network Sols., Inc.*, 141 F. Supp. 2d 648, 655 (N.D. Tex. 2001). Rigsby has not alleged that GoDaddy went beyond the registrar role by adding its own

content or advertising to the site or "using" the domain name for its own purposes. Instead, by merely allowing another entity to register the domain name without bad faith intent to profit from the registration, GoDaddy is shielded from liability under the ACPA.

## C. STATE-LAW CLAIMS

Rigsby's state-law claims for invasion of privacy, publicity, trade libel, libel, and violations of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, fare no better, as the Communications Decency Act, 47 U.S.C. § 230, shields GoDaddy from liability. "Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) (footnotes omitted). In designing § 230, "Congress 'made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.'" *Gonzalez v. Google LLC*, 2 F.4th 871, 886 (9th Cir. 2021) (alteration in original) (citation omitted).

Section 230's operative provision states "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." § 230(c)(1). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." § 230(e)(3). Immunity applies when three criteria are met: the provider is an interactive computer service, the plaintiff is treating the entity as the publisher or speaker, and the information is provided by another

information content provider. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). GoDaddy satisfies all three.

### 1. GoDaddy is a provider of an interactive computer service.

Section 230 defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). "Courts typically have held that internet service providers, website exchange systems, online message boards, and search engines fall within this definition." *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016). Information content providers, in contrast, are defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." § 230(f)(3). "Under the statutory scheme, an 'interactive computer service' qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue." *Carafano v. Metrosplash.com., Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) ("Congress thus established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them.").

We have yet to consider whether domain name registrars and website hosting companies like GoDaddy fall under the "relatively expansive definition" of an "interactive computer service." *See Carafano*, 339 F.3d at 1123. It is a novel

question for us, but one addressed by other courts. In *Ricci v. Teamsters Union Local 456*, the Second Circuit recognized that the term "has been construed broadly to effectuate the statute's speech-protective purpose" and easily concluded that § 230 "shields GoDaddy from publisher liability (with respect to web content provided by others) in its capacity as a provider of an interactive computer service." 781 F.3d 25, 28 (2d Cir. 2015) (citing, *inter alia*, *Kruska v. Perverted Justice Found. Inc.*, No. CV 08–0054–PHX–SMM, 2008 WL 2705377, at \*3 (D. Ariz. July 9, 2008) ("GoDaddy, as a web host, qualifies as an interactive computer service provider under the CDA.")); *see also Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 406 n.2 (6th Cir. 2014) (including "broadband providers, hosting companies, and website operators" within the term interactive computer service); Kathleen Ann Ruane, Cong. Rsch. Serv. Legal Sidebar, LSB10082, How Broad a Shield? A Brief Overview of Section 230 of the Communications Decency Act 2 (2018), https://sgp.fas.org/crs/misc/LSB10082.pdf (last visited January 26, 2023) (listing GoDaddy as an internet hosting company shielded by Section 230 immunity).

We agree with this approach. Though Rigsby argues that discovery is necessary to figure out which corporate relative was the domain name registrar, he acknowledges that one of the entities must be the registrar, claiming that GoDaddy Operating Company, LLC "operates as a website hosting provider" and "offers domain search, auctions, managed hosting, site protection, website security, and other domain registration services." We can set aside which corporate relative may be the actual registrar—Rigsby complains of conduct related to the domain name registration, and we accept a plausible claim against any of the named

defendants. As a domain name registrar and website hosting provider, GoDaddy "provides or enables computer access by multiple users to a computer server" and provides an "interactive computer service" under § 230(f)(2).

### 2. GoDaddy is not a publisher.

We are not persuaded by Rigsby's efforts to treat GoDaddy as the "publisher" of scottrigsbyfoundation.org. Rigsby's state-law claims assert that he was harmed by the gambling content on scottrigsbyfoundation.org, and he alleges that "[s]ince the hijack of the site, daily, Defendants have published false and defamatory statements concerning the Foundation's activities in the gambling world." Rigsby is mixing up GoDaddy's registration of the domain name with the creation and dissemination of a particular message. The third-party registrant—arguably an information content provider—is the one posting the content, not GoDaddy. Section 230 shields GoDaddy from publisher liability when another party is doing the speaking. *See Ricci*, 781 F.3d at 28 (holding that GoDaddy was shielded from publisher liability where the complaint alleged only that it refused to remove an allegedly defamatory newsletter).

### 3. GoDaddy was not acting as an information content provider.

GoDaddy enjoys § 230 immunity because, contrary to Rigsby's assertion that GoDaddy made "the affirmative decision to publish" the harmful gambling content, GoDaddy was not an information content provider. Websites may lose immunity if they make "a material contribution" to a site's content, *see Gonzalez*, 2 F.4th at 892 (quoting *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016)), but Rigsby's complaint is devoid of allegations that GoDaddy contributed to the content of the gambling site.

GoDaddy is offering only a domain name and a platform: a "website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online." *Kimzey*, 836 F.3d at 1270 (quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014)).

We are similarly unpersuaded by Rigsby's analogy to our decision in *Roommates.com*. In *Roommates.com*, the website created a series of questions and required subscribers to answer them in order to register with the site. *See* 521 F.3d at 1164. The site then displayed those answers on the subscriber's profile page. *Id.* at 1165. We held that "Roommate's own acts—posting the questionnaire and requiring answers to it—are entirely its doing and thus section 230 of the CDA does not apply to them." *Id.* Rigsby does not allege that GoDaddy required or otherwise induced the third-party registrant to post the objected-to gambling content on scottrigsbyfoundation.org. GoDaddy's "act" was limited to providing the third party a domain name, and nothing in Rigsby's complaint makes a plausible case for GoDaddy acting as an information content provider on scottrigsbyfoundation.org. Under these circumstances, GoDaddy is entitled to § 230 immunity, and his state-law claims are statutorily barred.

## D. Injunctive Relief

While Rigsby's claim for injunctive relief is difficult to decipher—as evidenced by the district court characterizing it as a claim without a cause of action—his reference to Arizona's Consumer Fraud Act leads us to construe his claim as seeking relief under that statute. This generous reading does not change the result; the claim is barred by § 230 of the CDA and it is inadequately pled.

The Arizona Consumer Fraud Act prohibits deceptive or unfair practices "in connection with the sale or advertisement of any merchandise." Ariz. Rev. Stat. § 44-1522(A). Rigsby seeks an injunction forbidding GoDaddy from, among other things, "passing off the merchandise and the services of The Scott Rigsby Foundation as being the merchandise and services of gambling interests." Again, Rigsby picks the wrong culprit. GoDaddy is not the one "passing off the merchandise"—the third-party registrant is the one allegedly promoting gambling services. Rigsby seeks to hold GoDaddy liable as a "publisher or speaker" of the third party's message. 47 U.S.C. § 230(c)(1). Because GoDaddy is being sued in its capacity as a provider of an interactive computer service, it is immune from consumer fraud liability under § 230. *See, e.g.*, *Gonzalez*, 2 F.4th at 886.

To the extent that Rigsby is alleging that GoDaddy's *sale* of the domain name violated the Arizona Consumer Fraud Act, Rigsby has still not adequately pleaded a claim. To succeed, Rigsby must establish that GoDaddy (1) made a misrepresentation in connection with the sale or advertisement of merchandise, and (2) that conduct proximately caused Rigsby to suffer damages. *See Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016); *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983). "The clear intent of this provision is to protect unwary buyers from unscrupulous sellers." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992). Because GoDaddy made no representations regarding the domain or any advertising or merchandise, this claim is a nonstarter.

## E. DECLARATORY RELIEF

Finally, we consider Rigsby's requests for declaratory relief. Under the Declaratory Judgement Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). We review the district court's denial of declaratory relief for abuse of discretion. *See Arizona v. City of Tucson*, 761 F.3d 1005, 1009–10 (9th Cir. 2014).

Rigsby seeks the following declarations:

1. GoDaddy's UTSA is unenforceable against Rigsby "given the failure to comply with the electronic signature requirements of 15 U.S.C. § 7001 and A.R.S. 55-7001 *et seq.*";

2. GoDaddy "cannot allow the hijacker to use the domain name scottrigsbyfoundation.org"; and

3. "The Scott Rigsby Foundation Inc. is the proper owner of the domain name scottrigsbyfoundation.org, so that Defendants must allow Plaintiffs to use that domain name."

The district court did not abuse its discretion in declining to afford Rigsby a declaratory judgment that the UTSA is unenforceable against him. Rigsby takes issue with the forum selection clause of the UTSA, pursuant to which the Northern District of Georgia transferred this case to the District of Arizona. Because we lack jurisdiction to review

the Northern District of Georgia's transfer order, Rigsby's effort to circumvent the jurisdictional barrier by reframing it as a declaratory judgment request can't fly. *See Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011) (instructing courts to consider whether granting such relief would "encourage the filing of declaratory actions as a means of forum shopping").

Moving to the second and third requested declarations, Rigsby has pleaded no viable claims that would allow us to provide the relief he seeks, namely blocking the third-party registrant and reinstating Rigsby as the rightful registrant of the domain name. *See United States v. Washington*, 759 F.2d at 1356 (recognizing that a court may "refuse to grant declaratory relief because the state of the record is inadequate to support the extent of relief sought"). But Rigsby is not necessarily without potential recourse, though we offer no view on his potential success. For example, the ACPA provides for an action against a registrant directly, requiring allegations that the registrant has a bad faith intent to profit from the mark and "registers, traffics in, or uses [the] domain name." 15 U.S.C. § 1125(d)(1)(A)(ii).

Although Rigsby presents a sympathetic ordeal, his ire, and his claims, are misdirected.[2] We affirm the district court's dismissal of Rigsby's claims, and we lack jurisdiction to review the motion to transfer.

**AFFIRMED in part, DISMISSED in part.**

---

[2] Given that Rigsby has had multiple opportunities to correct the deficiencies in his complaint and has been unable to do so, the district court acted within its discretion in denying him a fourth opportunity to amend.