967 P.2d 607

**JOHNSON INTERNATIONAL, INC.,**
an Arizona corporation,
Plaintiff–Appellant,

v.

**CITY OF PHOENIX, a municipal corporation; City of Phoenix Parks and Recreation Board, a duly appointed board of the City of Phoenix, Defendants–Appellees.**

No. 1 CA–CV 97–0215.

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 3, 1998.

Redesignated as Opinion and Publication
Ordered Nov. 9, 1998.

Review Denied Nov. 17, 1998.*

* Zlaket, C.J. and Feldman, J., dissent.          Jones, V.C.J., did not participate.

Jennings, Strouss & Salmon, P.L.C. by James M. Ackerman, Phoenix, and Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C. by Michael W. Wright, Phoenix, for Plaintiff–Appellant.

Ryley, Carlock & Applewhite, P.A. by N. Warner Lee, Phoenix, for Defendants–Appellee.

## OPINION

PATTERSON, Judge.

¶ 1   Plaintiff–Appellant, Johnson International, Inc. (Johnson), appeals from the superior court's entry of judgment dated March 28, 1997, dismissing Counts I–III of Johnson's original complaint and dismissing Counts I, II, III, V, VI, and VII of Johnson's First-Amended Complaint against Defendant–Appellee, City of Phoenix (City) pursuant to Rule 12(b)(6) of the Arizona Rules of Civil Procedure.   For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2   In December 1986, City entered into a fifty-year land use agreement (Bureau Agreement) with the Bureau of Reclamation (BOR), a division of the federal government, to use a tract of land known as "Reach 11" for public recreational development.   Reach 11 contains approximately 1,500 acres of land in northeast Phoenix.   Under the Bureau Agreement, any third-party agreements involving Reach 11 must be reviewed and approved by the BOR. The Bureau Agreement further states that such third-party contracts will not be effective until the approval of BOR is received.

¶ 3   In November 1990, City issued a Request for Developer Qualifications and Proposals (RFP) seeking proposals from developers to develop and manage a golf course and recreational area on Reach 11.   The RFP identified the Bureau Agreement and stated that any agreements entered into pertaining to Reach 11 would require the approval of BOR. The RFP stated that acceptance of a proposal "does not constitute an agreement by the City that any contract will actually be entered into by the City of Phoenix."   Further, the RFP stated: "Negotiations may be terminated for failure to reach mutually acceptable terms.   Compensation will not be provided to the developer if agreement cannot be reached."

¶ 4   Johnson submitted a proposal in which it would develop Reach 11 into two eighteen-hole golf courses and other public recreational facilities.   The proposal provided that Johnson would pay for such development and share with City the revenues derived from the golf courses for a period of time, at the end of which the rights to use the land would revert to City. In exchange, the City would extend to Johnson a long-term right to operate and earn profits from

the golf course. City accepted Johnson's proposal.

¶ 5 In February 1993, Johnson and City executed a Memorandum of Understanding (MOU). The MOU contained the parties' understanding and intentions and identified elements of a potential agreement for development of Reach 11. The MOU also contained the following language:

> This memorandum is not intended to be the final agreement or to include all of the material terms, which shall be subject to further negotiations, and it shall not be binding on either party.

¶ 6 The MOU further required that all terms of any future agreements meet the conditions of the Bureau Agreement and in some cases approval by BOR. Closing language of the MOU provided:

> IN WITNESS WHEREOF, the parties have executed this Agreement through their representatives duly authorized to execute this document and bind their respective entities to the terms and obligations herein contained on the day and year first written above.

After signing the MOU, Johnson began expending substantial sums of money to develop the design and plans for the Reach 11 project.

¶ 7 The parties negotiated for the next two and one-half years to reach the final draft agreements for the project. Two draft agreements were the result of the negotiations, a Development and Use Agreement and an Operator Use Agreement.[1] The Use Agreements contained provisions relating to the alignment of 56th Street and 64th Street which cross Reach 11. Maintaining the alignment of the streets was essential to the golf course plans.[2]

¶ 8 The Use Agreements were approved by the City of Phoenix Parks and Recreation Board (Parks Board) in June 1994. In July 1994, the Phoenix City Council (City Council) adopted a formal ordinance (Ordinance No. S22236) approving the Use Agreements and authorizing the City Manager to execute the Use Agreements.

¶ 9 In August 1994, the draft Use Agreements were submitted to BOR for approval. One year later, BOR submitted approximately fifty comments on the Use Agreements. One of the requirements of BOR was for Johnson to obtain an Environmental Inspection Assessment, something he was required to do but did not. Johnson agreed to work with BOR to meet its fifty concerns. However, shortly thereafter, L.B. Scacewater, the Assistant Director of the City Parks Board, submitted a proposal at a September 26, 1995 Parks Board meeting that was directly contrary to and inconsistent with the Use Agreements. At that time, City cancelled negotiations with Johnson. The Parks Board terminated the Use Agreements and on November 1, 1995, the City Council repealed Ordinance No. S22236.

¶ 10 Earlier in 1995, while the BOR review was pending, the City realigned 56th Street across Reach 11. Knowing the development of two golf courses would no longer be possible, Johnson proposed that it develop only one golf course and the other half would be recreational facilities. With this proposal, Johnson requested a covenant not to compete or the right of first refusal for another golf course that would be built in the area. City agreed to the development of only one golf course, but rejected Johnson's offer regarding a covenant not to compete or the right of first refusal.

¶ 11 Johnson sued the City, the Parks Board and various individual city representa-

---

1. These agreements will be referred to collectively in this decision as "Use Agreements." The Use Agreements contained the following language: "This Agreement shall not be effective until approved in writing by the United States of America acting through the Bureau of Reclamation." Further, the agreements at all times contained the word "draft" stamped on the front pages.

2. The Development and Use Agreement contained the following language: "The City hereby agrees that any alterations in the alignments depicted on the Roadway Corridor Map [which contains the alignment of the corridors for 56th Street and 64th Street] which has the consequence of imposing additional costs ... shall be reimbursed by the City...." Thus, once the parties executed the Use Agreements, City would no longer be able to realign 56th Street without penalty.

tives for breach of contract. Johnson alleged: breach of contract (Count I); promissory estoppel (Count II); breach of covenant of good faith and fair dealing (Count III); and interference with advantageous business opportunity (Count IV-against individual defendants only).

¶ 12   City filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Arizona Rules of Civil Procedure and argued that no contract existed between it and Johnson and thus, all of the breach allegations failed to state a claim upon which relief can be granted. City argued that both the MOU and the Use Agreements were at all times subject to BOR approval and no contract would be formed absent such authority.

¶ 13   Further, City argued that promissory estoppel claims against a municipality are rarely allowed and should be allowed only where the municipality has the authority to enter into the agreement. Without BOR approval, City had no such authority. Finally, City argued that Johnson failed to allege sufficient business expectancy and failed to establish interference with a third-party contract to satisfy the elements for interference with advantageous business opportunity.

¶ 14   The trial court granted City's motion to dismiss on Counts I–III finding that no contract existed between Johnson and the City. The court found that the MOU was the only executed document and it contained clear non-binding language. Johnson's Motion to Reconsider was denied and Johnson amended its complaint.

¶ 15   In its first-amended complaint, Johnson recharacterized the MOU as a "letter of intent" and thus containing good faith obligations. Johnson realleged Counts I–IV and added three new counts. Count V alleged the breach of the MOU as a letter of intent. Count VI alleged the breach of the Use Agreements as final agreements which bound the City to negotiate in good faith and to cooperate with Johnson to cure any BOR objections to the plan. Count VII alleged that City's restructuring of 56th Street breached the provision in the Use Agreements that the street not be realigned.

¶ 16   City moved to strike the first-amended complaint or in the alternative to dismiss the new claims and the realleged claims. City did not repeat its request to have Count IV dismissed. City argued that Counts I–IV were identical to the first complaint and the court had already handled those claims. Further, Count V merely realleged the claim that City breached the MOU and the alleged duty to negotiate in good faith accompanying that agreement. Counts VI and VII were asserting the same breach of contract claim on the facts asserted in the original complaint.

¶ 17   Johnson responded arguing that characterizing the MOU as a letter of intent attaches new legal significance, citing cases from other jurisdictions. The trial court disagreed with Johnson's new theory of liability and again dismissed all counts except for Count IV, interference with advantageous business opportunity against the individual defendants which remained from the original complaint.[3] The court entered a judgment in favor of the City. Johnson appeals from that entry of judgment. We have jurisdiction pursuant to Arizona Revised Statutes Annotated (A.R.S.) section 12–2101(B) (Supp. 1996).

## ISSUES

¶ 18   The issues are as follows:

I.   Whether the Use Agreements or the MOU constituted a binding contract between Johnson and City.

   A.   Whether Johnson's Amended Complaint stated a claim for breach of the Use Agreements.

   B.   Whether Johnson's Amended Complaint stated a claim for breach of · the MOU.

II.   Whether Johnson's Amended Complaint stated a claim for breach of implied covenants of good faith and fair dealing.

---

**3.** Johnson's response to the motion to dismiss and his brief contain facts not alleged in its complaint. The trial court properly did not consider these extraneous facts and neither do we.

III. Whether Johnson's Amended Complaint stated a claim for promissory estoppel.

IV. Whether Johnson is entitled to attorney's fees on appeal pursuant to the Use Agreements or to A.R.S. section 12–341.01.

## DISCUSSION

■ ¶ 19 When reviewing a motion to dismiss for failure to state a claim, this court looks to "whether the complaint, construed in the light most favorable to the plaintiff, sufficiently sets forth a valid claim." *Aldabbagh v. Department of Liquor Licenses,* 162 Ariz. 415, 418, 783 P.2d 1207, 1210 (App.1989). We take well-pleaded material allegations as admitted however, we need not rely on "conclusions of law or unwarranted deductions of fact...." *Id.* at 417, 783 P.2d at 1209. Interpretation of a contract is a mixed question of fact and law, which this court reviews de novo. *McNeel v. McNeel,* 169 Ariz. 213, 214, 818 P.2d 198, 199 (App.1991).

¶ 20 The trial court should not dismiss a matter where there is conduct which could be construed as binding that is sufficient to create a question of fact for the trier. *Pre-Fit Door, Inc. v. Dor–Ways, Inc.,* 13 Ariz. App. 438, 441, 477 P.2d 557, 560 (App.1970). However, where there is explicit language that the parties do not intend to be bound until a condition precedent, no fact question exists. *See Burkett v. Morales,* 128 Ariz. 417, 419, 626 P.2d 147, 148 (App.1981).

## I. Neither the MOU nor the Use Agreements created a binding contract between Johnson and City.

¶ 21 Johnson asserts that he and City had entered into a contract, arguing that, although the Use Agreements were never signed, the parties had manifested their intent to be bound. Further, Johnson argues that the MOU created the obligations of good faith and fair and exclusive dealing.

¶ 22 City argues that the Use Agreements do not create a contract because they were never executed. City further argues that both the MOU and the Use Agreements expressly provide that no contract would ex-

ist until BOR approved the agreements. Finally, City argues that the MOU contained no binding language and thus creates no contractual obligations to negotiate exclusively or in good faith.

## A. Johnson's amended complaint failed to state a claim that the Use Agreements created contractual obligations.

¶ 23 Johnson argues that the Use Agreements were binding and that City breached the agreements by changing the alignment of 56th Street. Johnson further argues that the realignment caused the BOR to reject the agreements. City argues that the unexecuted draft agreements could not be binding and thus it was entitled to realign 56th Street.

### 1. The Use Agreements were not binding.

¶ 24 Johnson argues that the circumstances surrounding the negotiations of the Use Agreements indicate that the parties intended to be bound. Specifically, it argues that the parties had agreed on the terms of the Use Agreements and that the agreements had been approved by the Parks Board and the City Council. City responds that it never intended to be bound until BOR approved the Use Agreements and those agreements were signed.

¶ 25 Additionally, Johnson argues that the passage of Ordinance No. S22236 indicated the City's binding intent. City responds that the ordinance merely authorized the City Manager to execute the agreements and that the ordinance did not change the underlying requirement of BOR approval. Finally, Johnson argues that submission of the Use Agreements to the BOR indicated the City's intent to be bound. Again, City argues that its intentions not to be bound by the Use Agreements until BOR approval was received were explicit.

■ ¶ 26 A contract may be formed, even if not formally executed, if it is clear the parties intended to bind themselves to the terms. *AROK Constr. Co. v. Indian Constr. Servs.,* 174 Ariz. 291, 297, 848 P.2d 870, 876

(App.1993); RESTATEMENT (SECOND) OF CONTRACTS § 27 (1981). A court may look to surrounding circumstances and the conduct of the parties to determine the parties' intent. *Burkett,* 128 Ariz. at 419, 626 P.2d at 148. The court must be able to determine if there has been a manifestation of mutual assent. *AROK,* 174 Ariz. at 297, 848 P.2d at 876.

¶ 27 The circumstances of this case indicate City's intent not to be bound. From the very beginning of these negotiations, it was expressly provided that the Use Agreements would not become effective without BOR approval. Each of the steps taken by the City before submission to and approval by BOR could not create a contract without BOR approval. The land was owned by the federal government and any use agreements pertaining to Reach 11 would require the ultimate approval of the federal agency. This requirement was included in the RFP, the MOU and the Use Agreements.

¶ 28 City further argues that the Use Agreements were not binding because they had not been signed by the City Manager in compliance with the City Charter.[4] City cites *Barron G. Collier, Inc. v. Paddock,* 37 Ariz. 194, 291 P. 1000 (1930), to support this argument. In *Barron Collier,* the Arizona Supreme Court refused to hold binding on the City a contract that was entered into in a manner inconsistent with charter provisions. *Id.* at 203, 291 P. at 1003.

¶ 29 Johnson argues that *Barron Collier* is archaic law and has been substantially limited by *Pointe Resorts, Inc. v. Culbertson,* 158 Ariz. 137, 761 P.2d 1041 (1988). In *Pointe Resorts,* the Arizona Supreme Court held that where the city passed an ordinance expressly approving a transaction and that transaction was substantially complete, failure to comply with the charter provisions will not invalidate the transaction. *Id.* at 143, 761 P.2d at 1047.

¶ 30 However, both cases are distinguishable on the ground that the contract in this matter required the approval of a third party wholly unrelated to City. Further, *Pointe Resorts* is distinguishable because the parties to that contract were not disputing their mutual intent to be bound. *Id.* at 142, 761 P.2d at 1046. Instead, some local residents were seeking to quash the deal. *Id.*

¶ 31 Here, City contends that it intended not to be bound absent BOR approval. The documents indicate a lack of intent to be bound. At all times, the Use Agreements contained a stamp of the word "draft" on their face. Further, the agreements contained language requiring BOR approval before they could be effective.[5] Thus, we find that the RFP, the MOU and the Use Agreements contained explicit language of the City's intent not to be bound absent BOR approval and no contract existed. BOR never granted its approval and, consequently, the documents above referenced and the lack of the City's intent to be bound preclude a contract formation.

**2. The City's realignment of 56th Street did not constitute a breach of the Use Agreements.**

¶ 32 Johnson argues that City had a duty to cooperate with it to achieve the fulfillment of the condition and that, by changing the alignment of 56th Street, City prevented the occurrence of that condition. City had no obligation under the MOU or the unsigned Use Agreements to aid Johnson in the fulfillment of that condition.

¶ 33 A party to the contract cannot prevent the fulfillment of a condition precedent and later rely on the failure of the condition to argue that no contract exists.

4. City Charter at Chapter XIX, Section 1 sets forth prerequisites to creating contractual obligations on the City. One requirement is that a contract must be signed by the city manager to be binding on the City.

5. City additionally argues for the first time on appeal that Johnson was not a party to the agreements and thus has no standing to bring these claims because the draft agreements were between City and Johnson, L.L.C., a corporation which was never formed. City further argues that Johnson never alleged in the complaint that there was privity between Johnson, Inc. and Johnson, L.L.C. Issues raised on appeal for the first time will not be reviewed by this court. *Premier Financial Servs. v. Citibank,* 185 Ariz. 80, 86–87, 912 P.2d 1309, 1315–16 (App.1995).

*Security Nat'l Life Ins. Co. v. Pre–Need Camelback Plan, Inc.*, 19 Ariz.App. 580, 582, 509 P.2d 652, 654 (1973). "However, this principle of law pertains to prevention or hindrance of the performance of a condition not to be performed by the promisor, when the promisor has no right under the contract to hinder or interfere with such performance." *Id.* at 582–83, 509 P.2d at 654–55 (quoting *Arizona Land Title & Trust Co. v. Safeway Stores, Inc.*, 6 Ariz.App. 52, 59, 429 P.2d 686, 693 (1967)). Thus, an agreement not to hinder must be present in the preliminary agreement.

¶ 34  Johnson further cites a Second Circuit case to support his argument. *Vanadium Corp. v. Fidelity & Deposit Co. of Md.*, 159 F.2d 105 (2d Cir.1947). However, the court in *Vanadium* was presuming the existence of an "apparently binding assignment." *Id.* at 108. No such binding agreement existed here.

¶ 35  The MOU and the Use Agreements provide that the City will not be bound until BOR approval was received. City was not required by any agreement not to prevent the fulfillment of a condition. No contract existed between Johnson and City. The Use Agreements were never signed and were not approved by the BOR and thus never became effective. Thus, the City's realignment of 56th Street was not a breach.

**B. Johnson's Amended Complaint did not state a claim that City breached the obligation to negotiate in good faith and exclusive dealing because the MOU was not a binding contract.**

¶ 36  Johnson argues that we should construe the MOU as a letter of intent and that the MOU created obligations on the City to negotiate in good faith and to deal exclusively with Johnson. City argues that the MOU contained non-binding language and made any agreement subject to BOR approval.

¶ 37  Johnson cites authority from other jurisdictions for its argument that, under certain circumstances, letters of intent can bind parties to negotiate in good faith. *See Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F.Supp. 491, 497 (S.D.N.Y.

1987) (finding that commitment letter obligated both sides to negotiate in good faith toward a final contract conforming to the agreed terms); *Channel Home Centers v. Grossman*, 795 F.2d 291 (3rd Cir.1986) (finding sufficient evidence to go to jury regarding whether a landlord breached an agreement to negotiate in good faith by suddenly terminating discussions and renting premises to another party). Johnson argues that circumstances exist which support the notion that the parties intended the MOU to bind them to the obligation to negotiate in good faith.

¶ 38  Johnson contends that the first non-binding clause in the body of the MOU relates only to the fact that the parties do not intend to be bound to any final agreement relating to Reach 11. This position is correct to the extent that it is consistent with the requirement of BOR approval. Johnson further argues, however, that the language appearing immediately before the signature block indicates an intent to be bound to some obligations. That language provides, "IN WITNESS WHEREOF, the parties have executed this Agreement through their representatives duly authorized to execute this document and bind their respective entities to the terms and obligations herein contained on the day and year first written above." Thus, Johnson argues this language must bind the parties to a good faith obligation and exclusive dealings in negotiating the deal to have any effect.

¶ 39  Johnson finally argues that the enumerated purpose of the MOU supports its contention that the parties intended the obligation of good faith negotiations. The enumerated purpose was to "outlin[e] the following terms and conditions which the parties intend to incorporate into a final agreement. . . ." However, an expression of intention to do something is not a promise. *School Dist. No. 69 of Maricopa County v. Altherr*, 10 Ariz.App. 333, 340, 458 P.2d 537, 544 (App.1969).

¶ 40  The New York District Court in *Teachers* found that a preliminary agreement can create good faith obligations on the parties where general binding language exists.

670 F.Supp. at 498. The *Teachers* court recognized that parties can bind themselves to incomplete agreements recognizing that substantive terms can be agreed upon at a later date. *Id.* However, *Teachers* is distinguishable in that the commitment letter contained no express nonbinding language similar to the language in the MOU. This is significant because the ultimate question is the intent of the parties. *Id.* at 499. The *Teachers* court stated that the court's "first and most important factor looks to the language of the preliminary agreement for indication of whether the parties considered it binding or whether they intended not to be bound until the conclusion of final formalities." *Id.*

¶ 41   The *Teachers* court looked to other factors that can be used, absent clear expression, in determining intent. Such factors were: context of the negotiations, *id.* at 500; openness of terms, *id.* at 501; partial performance, *id.* at 502; customary form for such transactions, *id.* at 503; and conditions precedent to enforcement, *id.* at 505. Here, the MOU contains a clear expression of intent not to be bound. Consequently, it is not necessary that we take these other factors into consideration. The RFP, the MOU and the Use Agreements all support the existence of this mandatory requirement.

¶ 42   Finally, the Ninth Circuit has addressed the binding effect of similar preliminary agreements. *Rennick v. O.P.T.I.O.N. Care Inc.*, 77 F.3d 309 (9th Cir.1996). In *Rennick*, the court found that "letter of intent" is not a legal term of art and that generally the purpose is not to bind parties to the ultimate contractual obligations. *Id.* at 315. To determine whether the agreement binds anything, the court must look to the content of the letter and to the circumstances. *Id.* The agreement in *Rennick* contained a non-binding clause similar to ours and also contained a provision requiring approval of the O.P.T.I.O.N. Board of Directors. *Id.* at 313. The court found no binding intent absent approval of the board of directors. However, the *Rennick* agreement contained express language that the parties agreed to "continue good faith discussions directed toward the creation of formal written contract that, upon approval by the board of Director [sic] of each party, will be executed to establish the following arrangements." *Id.* at 314. Thus, a good faith obligation could be found in an otherwise nonbinding agreement where the parties included such language. *Id.* at 316.

¶ 43   Our review of the law leads us to conclude that where there is an express nonbinding clause, we will honor it and not look to surrounding circumstances to imply an obligation at variance with the express clause. *See Teachers*, 670 F.Supp. at 497 ("enforceable legal rights do not arise until ... the expression of mutual consent to be bound"); *Budget Marketing, Inc. v. Centronics Corp.*, 927 F.2d 421 (8th Cir.1991) (letter of intent did not impose duty of good faith in negotiations); *Channel Home*, 795 F.2d at 298 (evidence of preliminary negotiations do not alone constitute a contract). This court has held that "the policy of the law favors enforcement when it is clear that the parties intended themselves to be bound." *AROK*, 174 Ariz. at 297, 848 P.2d at 876.

¶ 44   Thus, City did not breach the MOU by realigning 56th Street consistent with changing needs and thereby cancelling its agreement with Johnson. Further, no duty existed to deal exclusively with Johnson and therefore the City's alleged discussions with other developers did not violate any obligation.

**II.   Johnson's Amended Complaint did not state a claim that City breached the implied covenants of good faith and fair dealing because no contract existed leading to the implied obligation.**

¶ 45   Johnson argues that City breached the implied covenants of good faith and fair dealing by realigning 56th Street contrary to the Use Agreement and by discussing options for the Reach 11 project with other developers. City argues that formation of a contract is necessary for any implied covenants to bind.

¶ 46   Every contract contains implied covenants of good faith and fair dealing. *Wagenseller v. Scottsdale Memorial Hospi-*

*tal,* 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985). However, the obligation presumes the existence of a valid contract. *Rawlings v. Apodaca,* 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986).

¶ 47 We have already decided that neither the MOU nor the Use Agreements constituted a binding contract between Johnson and City, and therefore, no such implied obligations arise.

### III. Johnson's Amended Complaint did not state a claim for promissory estoppel because the MOU was not a promise and the theory of promissory estoppel cannot be used against City.

¶ 48 Johnson argues that he stated a claim for which relief could be granted on promissory estoppel because the facts alleged must be taken as true. City argues that no promise was made because the MOU promised nothing.

¶ 49 Promissory estoppel is not a theory of contract liability, but instead a replacement for a contract when parties are unable to reach a mutual agreement. *AROK,* 174 Ariz. at 299, 848 P.2d at 878; *see also, Schade v. Diethrich,* 158 Ariz. 1, 6, 760 P.2d 1050, 1055 (1988). Section 90 of the RESTATEMENT (SECOND) OF CONTRACTS provides:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Thus, to state a claim for promissory estoppel, the plaintiff must allege that a promise was made. *See Mac Enterprises, Inc. v. Del E. Webb Development Co.,* 132 Ariz. 331, 336,

645 P.2d 1245, 1250 (App.1982). Although Arizona is a notice pleading state [6], claims of promises for purposes of promissory estoppel must be specifically plead. *Tiffany Inc. v. W.M.K. Transit Mix, Inc.,* 16 Ariz.App. 415, 419, 493 P.2d 1220, 1224 (1972).

¶ 50 Johnson's complaint alleges that its reliance on the MOU as a promise was reasonable. This is a fact that we must take as true. However, Johnson must first plead in its complaint that a promise was made. This was not done.

¶ 51 Johnson alleges that the signing of the MOU was the promise upon which it relied.[7] The MOU cannot, by itself, be a promise when the clear language of the agreement precludes such an interpretation. *Altherr,* 10 Ariz.App. at 340, 458 P.2d at 544 (holding that "[a]n expression of an intention to do something is not a promise ... "). Johnson's conclusion that the MOU is a promise is conclusory and thus, we need not take the conclusion as true. *Aldabbagh,* 162 Ariz. at 417, 783 P.2d at 1208. Thus, Johnson's complaint does not allege a promise on which it relied for purposes of a promissory estoppel claim.

¶ 52 Chapter XIX, section 1 of the City Charter prohibits by design the assertion of a promissory estoppel claim against City. *See Barron Collier,* 37 Ariz. at 194, 291 P. at 1000; *Pointe Resorts,* 158 Ariz. at 137, 761 P.2d at 1041. Johnson argues that *Pointe Resorts* changes this by finding a contract existed where not all requirements of the Charter had been met. However, the two cases are distinguishable. Chapter XIX provides that the requirements be met "unless otherwise provided by law." In *Pointe Resorts,* unlike *Barron Collier,* another provision to the City Charter had been enacted relating specifically to the trade of Mountain Preserve Land.[8] 158 Ariz. at 138, 761 P.2d at

---

6. Rule 8, Ariz. R. Civ. P.

7. Johnson, in its opening and reply briefs, argues that other promises were made during the course of negotiations that followed the MOU and it argues that the City's passing of the Ordinance constituted a promise. However, these allegations were not plead in either of Johnson's complaints. The trial court properly disregarded these extraneous facts and we do the same.

Thus, we need not deem these alleged facts to be true and we need not address them on appeal. *See Premier Financial Servs.,* 185 Ariz. at 86–87, 912 P.2d at 1315–16; *Tiffany,* 16 Ariz.App. at 419, 493 P.2d at 1224.

8. Chapter 26, section 2 provides in relevant part that "Mountain Preserve property may be traded if such trade is approved by the Council by ordinance prior to January 1, 1989 in accor-

1042. That requirement which superseded the requirement in Chapter XIX had been met. *Id.* at 142, 761 P.2d at 1046. In *Barron Collier,* no such other law existed leaving Chapter XIX to control. *Id.* Chapter 26 does not pertain to this tract of land and no such other law exists. Thus, Johnson's reliance on *Pointe Resorts* is misplaced. Chapter XIX controls and precludes Johnson from bringing a promissory estoppel claim against City.

### IV. Johnson is not entitled to attorneys' fees on appeal pursuant to the Use Agreements or to A.R.S. section 12–341.01 because no contract existed.

¶ 53 Johnson seeks its attorneys' fees under the applicable clause in the Use Agreements.[9] However, because we find that the unexecuted Use Agreements do not constitute a binding contract on the parties, such provisions are not applicable.

¶ 54 In the alternative, Johnson seeks attorneys' fees under A.R.S. section 12–341.01. That section provides that a prevailing party in a contract dispute is entitled to its attorneys' fees. However, because Johnson has not prevailed, we deny his request for attorneys' fees pursuant to A.R.S. section 12–341.01.

### CONCLUSION

¶ 55 For the foregoing reasons, we affirm the trial court's dismissal of Counts I–III, and Counts I–III and V–VII of Johnson's first-amended complaint.

VOSS, P.J., and SULT, J., concur.

---

9. The clause appearing in both agreements provides: "In the event that either the City or the Operator shall bring or commence an action to enforce the terms and conditions of this Agreement, or to obtain damages against the other party arising from any default under or by violation of this Agreement, then the prevailing party shall be entitled to and shall be paid reasonable attorney's fees and court costs, therefor." dance with the provisions set forth in this Chapter."