67 P.3d 734

STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Petitioner,

v.

The Honorable Pendleton GAINES, and the Honorable Cari A. Harrison, Judges of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judges,

Armando Reyes and Patricio Duenez, Real Parties in Interest.

No. 1 CA–SA 03–0054.

Court of Appeals of Arizona, Division 1, Department E.

May 8, 2003.

Richard M. Romley, Maricopa County Attorney By Craig A. Raymond, Deputy County Attorney, Phoenix, Attorneys for Petitioner.

Susan Sherwin, Office of the Legal Advocate By Steven Tucker, Deputy Legal Advocate, Phoenix, Attorneys for Real Parties in Interest.

Daniel R. Raynak, Phoenix, Attorney for Real Parties in Interest.

**OPINION**

SNOW, Judge.

¶ 1 The State petitions for special action relief from two superior court orders in a civil Sexually Violent Persons ("SVP") trial pursuant to Arizona Revised Statutes ("A.R.S.") section 36–3706 (2003), precluding the State from introducing admissions made by Armando Reyes and Patricio Duenez ("Defendants"). These admissions were made during Defendants' participation in a sex offender treatment program while incarcerated. For the following reasons, we accept jurisdiction over the special action and grant relief by vacating the suppression order.

## FACTS AND PROCEDURAL HISTORY

¶2 The limited record before us reflects that Defendants were separately convicted of unrelated sexual offenses. While the underlying facts of the two cases differ, both Defendants participated for a period of time in the Sex Offender Treatment Program ("SOTP") while incarcerated on the sexual offense convictions.[1] The SOTP provided testing, assessment and therapy for those admitted into the program. Both Defendants participated in this program until it was discontinued for lack of funding in 1996.[2] As a mandatory condition of participation in the program, Defendants each signed a release authorization titled "Waiver of Confidentiality" that allowed the release of certain information to identified parties.[3] This document also contained a list of items not included in the waiver.

¶3 In both cases, Defendants were within 180 days of release from their criminal sentences when the State filed petitions for civil detention in Maricopa County Superior Court pursuant to A.R.S. §§ 36–3701 through 36–3717 (2003), Arizona's Sexually Violent Persons Act. In both cases, the superior court signed the order, finding probable cause to believe that Defendants are sexually violent persons and ordering their detention at a treatment center until a trial could be held on the State's allegation of Defendants' SVP status. In addition, the court also made provisions for court-appointed counsel to represent Defendants.

¶4 Both Defendants filed motions in limine to preclude the State from introducing evidence at trial that fell into one of the categories specifically excluded from release by the earlier waiver, but that A.R.S. § 36–3702(B)(2) (2003) made available to the county attorney for use in SVP proceedings.[4] This evidence included, among other documents, a questionnaire completed by Defendants and reports compiled following polygraph examinations of Defendants that included admissions of uncharged sexual offenses. The State responded, asking each court to deny the motions based on our interpretation of A.R.S. § 36–3702(B)(2) in *Martin v. Reinstein*, 195 Ariz. 293, 987 P.2d 779 (App.1999).

¶5 In both cases, the trial courts agreed with Defendants that the evidence in question should be suppressed.[5] The State then

---

1. According to Duenez, participation in the SOTP was highly desirable as "it conferred many desirable benefits on its participants.... [T]he SOTP potentially allowed for good time credits and placement in a better prison yard facility with fewer risks of being assaulted by general population inmates who disliked sex offenders in general."

2. According to the State, funding for this particular program ended in 1996, but other similar in-house sex offender treatment programs have replaced it and are currently ongoing. The waiver of confidentiality used in those programs has been revised and is not at issue here.

3. In the waiver, Defendants:
   [A]gree that the following information may be released, when required, to Corrections Staff and other law enforcement agencies, by professional staff of the Sex Offender Treatment and Education Program:
   1. Information concerning program participation.
   2. Activities in which you engage during treatment, e.g. Psycho [sic] education, group, sex education class, individual therapy, etc.
   3. Your overall general response to those activities from no. 2 above.
   4. A statement of risk in various social situations to which you may be released.

5. Any indicated treatment activities that may reduce your risk to reoffend[.]
6. Interpreted assessment activities including pencil/paper test (MMPI, MSI, and physiological assessment).
   This does not include:
   1. Raw dat[a] from testing (No. 6 above)[.]
   2. Disclosure of undocumented sexual misconduct; pertinent information will be blackened out of material.
   3. Autobiographical data contained in your workbook.
   Be advised that professional therapeutic staff are required by law, supported by policy and procedure, to inform affected parties of any imminent danger to their physical well being, (this includes the client) and any potential risk (including sexual) to children. Also, victim reports of previously undocumented offenses require disclosure to an officer of the court.

4. Both parties concede that the evidence in question here falls into one of the categories created in A.R.S. § 36–3702(B)(2).

5. In Reyes's case, the trial court granted the motion in limine, but no explanation appears in the minute entry. In Duenez's case, the trial court granted the motion in limine, ruling in a minute entry that the waiver was a contract that

filed a petition for special action in this court, asking us to reverse the suppression orders and allow the evidence to be admitted in support of the State's SVP petition in the superior court.

## I. JURISDICTION

■ ¶ 6 Special action jurisdiction is appropriate when necessary to resolve an issue affecting numerous cases and when "providing immediate appellate court guidance on this pure issue of law serves the substantial interest in achieving judicial economy." *State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, 585, ¶ 9, 30 P.3d 649, 652 (App.2001) (citing *Martin*, 195 Ariz. at 301, ¶ 11, 987 P.2d at 787 (stating that "[c]oncern for those incarcerated, the risk of inconsistent adjudications, and the promotion of judicial economy" are appropriate considerations in determining whether special action jurisdiction should be accepted)). The issue before us reflects a current division in the superior courts, and thus merits the acceptance of jurisdiction.[6] *See, e.g., Ariz. Dep't of Pub. Safety v. Superior Court*, 190 Ariz. 490, 494, 949 P.2d 983, 987 (App.1997) (accepting jurisdiction when "[t]he issue presented is purely one of law and one on which the superior court judges are divided.").

## II. MERITS

¶ 7 The State contends that the trial court in each case erred in suppressing evidence obtained during Defendants' participation in the SOTP because the plain language of A.R.S. § 36–3702(B)(2) requires release of the information. Defendants disagree, stating that the waiver precluded release of this information, the doctrine of promissory estoppel should apply to bar admission of the information in SVP trials, and public policy

should be specifically enforced because "[i]f the contract is not enforced then convicted sexual offenders may decline to enter any treatment program while incarcerated."

6. The Maricopa County Superior Court issued a stay in another SVP determination, *In re the Detention of Richard Corbett Beard*, CV 2002–011750, pending the outcome of this special action. In *Beard*, the relevant facts and procedural history appear identical, except that in Beard's

considerations support suppression of the information.

### A. In the "Waiver of Confidentiality," the State Does Not Agree to Withhold the Evidence at Issue.

■ ¶ 8 Defendants contend that the waiver Defendants signed constituted a valid contract between the SOTP and Defendants not to release the documents in question. Accordingly, they argue the waiver should be enforced to deny release of the documents at issue here. The State argues that the release authorization Defendants signed is simply a waiver of physician-patient privilege with respect to certain categories of documents. Accordingly, the State contends that in the waiver Defendants merely agreed to allow the disclosure of certain documents, and thus, the waiver does not constitute a further agreement not to disclose any documents not included in the waiver.

¶ 9 The document each Defendant signed is an SOTP release authorization titled "Waiver of Confidentiality." Those inmates who wished to participate in the SOTP were required to sign it in order to participate in the program. The waiver lists six specific categories of information that may be released to law enforcement agencies if requested. It also lists three categories of information that are not included in this waiver of confidentiality. The waiver does not represent that the information excluded from the waiver would not be released under other circumstances. In fact, the waiver specified that "therapeutic staff are required by law, supported by policy and procedure, to inform affected parties of any imminent danger to their physical well being, (this includes the client) and any potential risk (including sexual) to children." Accordingly, the waiver cannot be construed as an agreement be-

case, the superior court reached the opposite conclusion and denied Beard's motion in limine. In a minute entry, the court stated that the part of the waiver at issue "appears to be mere surplusage and amounts to an illustrative non-exclusive listing of those items not subject to the Waiver. As such the list is merely informational, unsupported by consideration and non-contractual in nature."

tween the SOTP and Defendants not to release the information excluded from the waiver under other circumstances.

¶ 10 In A.R.S. § 36–3702(B)(2), the legislature enumerates the documents that must be disclosed to the State when it is pursuing an SVP classification. The statute reads, in relevant part:

B. The agency [with jurisdiction over the alleged SVP] shall provide the county attorney or attorney general with the following to support the written request that a petition be filed:

2. All records of evaluation and treatment, including any of the following:

(a) All psychological and psychiatric tests and assessment reports and supporting information.

(b) Group notes, autobiographical notes, progress notes, psychosocial reports or other materials that are prepared by or that relate to the person while the person was in custody or receiving treatment from the submitting agency or any other agency.

A.R.S. § 36–3702(B)(2). All parties concede that the documents at issue fall into the categories described in A.R.S. § 36–3702(B)(2), which compels their disclosure. Thus, the statute compels the release of the information and the waiver does not prohibit it. Under such circumstances, the documents must be disclosed.

■ ¶ 11 Defendants argue that the statute violates the physician-patient privilege. We have already decided in *Martin v. Reinstein*, in which we interpreted the SVP statutes, that because this privilege is statutory, the boundaries of the privilege can also be statutorily altered. *Martin*, 195 Ariz. at 320, ¶ 96, 987 P.2d at 806 ("Because [the physician-patient privilege] is a statutory privilege, the legislature is generally free to limit it . . . [i]ndeed, the legislature has, in several instances, determined that the public good requires that statutory or rule-based confidentiality give way to serve a greater good."). Accordingly, the privilege itself, as defined in A.R.S. § 32–2085 (2001), is also subject to the disclosure requirements of A.R.S. § 36–3702(B)(2) and cannot operate to preclude disclosure of the documents.

¶ 12 Duenez further argues that "the Arizona legislature enacted the SVP Act in 1995, [Defendant] entered the SOTP in 1996." Accordingly, Duenez maintains that the SOTP staff had "an affirmative duty to inform prospective patients of the legal ramifications" of the decision to join the program. In fact, the Arizona State Legislature passed the SVP Act in 1995, and it became effective on July 1, 1996. 1995 Ariz. Sess. Laws, ch. 257, § 7. The dates on which Defendants signed the SOTP waiver and entered the SOTP are unclear from the record before us.

■ ¶ 13 While we appreciate the practical appeal of Duenez's argument, in this case it has no legal effect. Even assuming that Duenez is correct that the statute mandating the release of these records was already in effect at the time Defendants signed the waiver, Duenez would not be entitled to relief as the provisions of the SVP statute were impliedly included in the waiver. *Higginbottom v. State*, 203 Ariz. 139, 142, ¶ 11, 51 P.3d 972, 975 (App.2002) ("It has long been the rule in Arizona that a valid statute is automatically part of any contract affected by it, even if the statute is not specifically mentioned in the contract."); *see also Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods., Inc.*, 167 Ariz. 383, 389, 807 P.2d 1119, 1125 (App.1990). "Regardless of the language of a contract, 'it is always to be construed in the light of the . . . law then in force.' " *Higginbottom*, 203 Ariz. at 142, ¶ 11, 51 P.3d at 975 (quoting *McCullough v. Virginia*, 172 U.S. 102, 112, 19 S.Ct. 134, 43 L.Ed. 382 (1898)). Therefore, "where a contract is incompatible with a statute, the statute governs." *Id.* (quoting *Huskie v. Ames Bros. Motor & Supply Co.*, 139 Ariz. 396, 402, 678 P.2d 977, 983 (App.1984)). Accordingly, the waiver must be construed to be compatible with A.R.S. § 36–3702(B)(2).

**B. Promissory Estoppel is Not a Valid Basis for Suppression of this Evidence.**

¶ 14 Apparently arguing in the alternative, Defendants assert that even if the waiver did not constitute a valid contract, they detrimentally relied on the language therein, and

thus the doctrine of promissory estoppel should apply to require adherence to language found in the waiver agreement. In support of this proposition, Defendants rely on principles expressed in *King v. Riveland,* 125 Wash.2d 500, 886 P.2d 160 (1994).[7] However, in *King,* the program agreement at issue expressly prohibited the state from releasing the relevant information. *Id.* at 163. There are no such representations by the State in the waiver agreement here. And, as the State points out, Defendants' reliance on *King* is further misplaced as *King* dealt with a situation in which the evidence in question did not specifically fall into one of the categories of information required to be released under Washington's SVP statute. *Id.* at 171. Here, both parties concede that the evidence suppressed by the trial court falls into the categories created by A.R.S. § 36–3702(B)(2).

¶ 15 To prove promissory estoppel, Defendants must show that the State made a promise and should have reasonably foreseen that Defendants would rely on that promise. *See Contempo Constr. Co. v. Mountain States Tel. & Tel. Co.,* 153 Ariz. 279, 282, 736 P.2d 13, 16 (App.1987). In addition, Defendants must show that they actually relied on that promise to their detriment. *Id.; see also* Restatement (Second) of Contracts § 90 (1981) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."). "Promissory estoppel is not a theory of contract liability, but [is] instead a replacement for a contract when parties are unable to reach a mutual agreement." *Johnson Intern., Inc. v. City of Phoenix,* 192 Ariz. 466, 474, ¶ 49, 967 P.2d 607, 615 (App.1998).

¶ 16 At oral argument, Defendants acknowledged that there is no specific language in the waiver or the program agreement in which the State promises not to reveal the information at issue. Defendants allege that the waiver of physician-patient privilege regarding certain enumerated documents was the promise upon which they re-

lied. However, the waiver did not agree to withhold documents not included in the waiver, it only specifically excluded them from the release authorization. The waiver cannot be a promise when the clear language of the agreement precludes such an interpretation. *Id.* Accordingly, there is no promise relating to these documents on which Defendants could rely for purposes of promissory estoppel.

¶ 17 Even assuming that a promise was made and that Defendants did detrimentally rely on that promise, it is still doubtful that promissory estoppel would apply in this case as Arizona courts have previously held that, as a general rule, promissory estoppel will not lie against the State. *See, e.g., Bd. of Trs. v. Wildermuth,* 16 Ariz.App. 171, 173, 492 P.2d 420, 422 (1972) ("The general rule is, that the doctrine of estoppel [i]n pais will not lie against a state or its agencies when acting in its character as a sovereign"); *State ex rel. Herman v. Tucson Title Ins. Co.,* 101 Ariz. 415, 417, 420 P.2d 286, 288 (1966) ("[P]romissory estoppel as a substitute for consideration is not binding on the state."). "[T]he government may be estopped only when its 'wrongful conduct threatens to work a serious injustice and … the public interest would not be unduly damaged.' " *Valencia Energy Co. v. Ariz. Dep't of Revenue,* 191 Ariz. 565, 576, ¶ 33, 959 P.2d 1256, 1267 (1998) (citation omitted) (overruling previous line of tax cases to allow equitable estoppel, in certain limited circumstances, against the Arizona Department of Revenue in tax matters). Accordingly, the doctrine of estoppel does not provide an adequate basis for upholding the suppression orders in this case.

### C. The Applicable Public Policy Has Been Decided By The Legislature.

¶ 18 Defendants also argue that public policy reasons should compel suppression of the documents in question. Defendants contend that the knowledge that these documents are admissible in potential SVP trials may cause those sex offenders in the SOTP to be less

---

7. *King* has been superseded by statute. Wash. Rev.Code § 71.09.025 (1997); *see also Q.L.M. v.* *State,* 105 Wash.App. 532, 20 P.3d 465, 469 (2001).

than completely candid when participating in treatment. As a result, several things could occur. First, the sex offender may not benefit from the treatment program as desired due to a fear that what they reveal may be used against them in a future SVP trial. Second, sex offenders may actively conceal their propensities for future offenses, resulting in the release of these sex offenders without the ability to consider their potential for future sexual offenses. The State concedes that public policy and fairness problems may exist, but contends that these problems are outweighed by the need to learn about the existence, nature and severity of any mental disorders, the likelihood of re-offense, and the offenders' ability to control their behavior and by the need to present any relevant information discovered in an SVP trial.

¶ 19 While we also agree that the decision to reverse the suppression order may have the effects described by Defendants, the applicable legal principles and the plain language of the statute compel reversal of the suppression orders. Furthermore, we note that consideration of these public policy issues is firmly in the province of the legislature, not this court. *See, e.g., Hamblen v. Hamblen,* 203 Ariz. 342, 346, ¶ 21, 54 P.3d 371, 375 (App.2002) ("[A] declaration of public policy in this guise is a matter for the state and federal legislatures and not the courts."); *State v. Fell,* 203 Ariz. 186, 189–90, ¶ 13, 52 P.3d 218, 221–22 (App.2002) (citing *Vo v. Superior Court,* 172 Ariz. 195, 204–05, 836 P.2d 408, 417–18 (App.1992) ("[W]e cannot consider the wisdom or soundness of policy of legislative enactments, because such matters are clearly addressed to the legislature, not to the courts.")).

## CONCLUSION

¶ 20 For the preceding reasons, we accept jurisdiction over the State's petition for special action and grant relief by reversing the trial courts' orders suppressing the SOTP evidence based on the SOTP "Waiver of Confidentiality."

CONCURRING: JON W. THOMPSON and ANN A. SCOTT TIMMER, Judges.