**J–SQUARED TECHNOLOGIES, INC,**
**and J–Squared Technologies**
**(Oregon) Inc., Plaintiffs,**

v.

**MOTOROLA, INC., Defendant.**

**No. CIV. 04–960SLR.**

United States District Court,
D. Delaware.

April 13, 2005.

Sean J. Bellew, Esquire and David A. Felice, Esquire of Cozen O'Connor, Wilmington, Delaware. Of Counsel: Kevin F. Berry, Esquire of Cozen O'Connor, Philadelphia, Pennsylvania.

William W. Bowser, Esquire of Young Conaway Stargatt & Taylor, Wilmington, Delaware. Of Counsel: Randy Papetti, Esquire and Richard A. Halloran, Esquire of Lewis and Roca, Phoenix, Arizona.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

On August 20, 2004, plaintiffs J–Squared Technologies, Inc. ("JST") and J–Squared Technologies (Oregon), Inc. ("JSO") sued defendant Motorola, Inc. alleging: (1) breach of contract; (2) promissory estoppel; (3) negligent misrepresentation; (4) breach of duty of good faith and fair dealing; and (5) violation of Arizona's Consumer Fraud Act. (D.I.1) Plaintiffs seek compensatory and punitive dam-ages. On September 23, 2004, defendant moved to transfer the case to the District of Arizona or, alternatively, to dismiss pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).[1] (D.I.10) Plaintiffs oppose the motion (D.I.13) and defendant has filed its reply. (D.I.15)

## II. BACKGROUND

Plaintiffs are commissioned sales agents who sell products for various computer manufacturers.[2] JST is a Canadian corporation maintaining its principal place of business in Kanata, Ontario. (D.I.1) JSO is an Oregon corporation with its principal place of business in Portland, Oregon. (Id.)

Defendant is a Delaware corporation with its headquarters in Schaumburg, Illinois. (D.I.11) Motorola Computer Group ("MCG") is a business unit of defendant. (Id. at A1) MCG manufactures computer boards and other products for use in embedded computing applications. (Id.)

MCG negotiated a Manufacturer's Representative Agreement ("MRA") with JST ("the JST agreement") in October 2002. (D.I. 13 at 3) In March 2003, MCG negotiated a MRA with JSO ("the JSO agreement").[3] During these negotiations, defendant led plaintiffs to believe that it intended to maintain a long-term independent sales network with plaintiffs. (Id.) According to plaintiffs, defendant's representatives knew, or should have known, that it had no intention of entering into such a relationship. (D.I. 13 at 5)

Both the JST and JSO agreements involved the sale of defendant's products in

---

1. On February 4, 2005, the court denied defendant's motion to transfer this action to the District of Arizona. (D.I.17)

2. For the purposes of considering defendant's motion to dismiss, this court states the facts as alleged by plaintiffs.

3. By their terms, both agreements are controlled by Arizona law. (D.I. 1, Ex. A at 14)

Washington, Oregon, Idaho and Canada. (*Id.*) Both agreements had a term of one year, to be renewed upon written agreement of the parties. (D.I. 13 at 4) JSO and JST received commission payments under the agreements directly from defendant. (*Id.*)

JST anticipated a $100,000 profit from sales of defendant's products for the first year of the JST agreement. (*Id.*) JSO estimated a profit of $200,000 for the first year. (*Id.*) In reliance on defendant's intent to establish a long-term sales network with plaintiffs, JST invested more than $500,000 in support of defendant's sales in Canada and JSO invested more than $300,000 in support of defendant's sales in the United States. (*Id.*)

In December 2003, one year after the execution of the JST agreement, the parties were still "act[ing] in accordance with the terms and conditions of the JST agreement." (D.I. 13 at 5) On February 26, 2004, defendant sent notice to JST that the JST agreement had expired on December 2, 2003, and that defendant's relationship with JST had terminated on that date. (*Id.*)

Also on February 26, 2004, defendant notified JSO of the cancellation of the JSO agreement for JSO's failure to meet performance standards under the agreement. (*Id.* at 6) Plaintiffs argue that this notice was part of defendant's plan to eliminate the costs of having to pay commissions to plaintiffs while, at the same time, taking advantage of the good will that plaintiffs had established during the first year of the agreements. (*Id.* at 6–7)

## III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept

as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

## IV. DISCUSSION

Defendant contends that: (1) plaintiffs cannot bring a consumer fraud claim because, under Arizona law, they are not consumers;[4] (2) the contracts at issue preclude plaintiffs' promissory estoppel and negligent misrepresentation claims; and (3) under the contracts at issue, plaintiffs cannot recover punitive damages.

### A. The Arizona Consumer Fraud Act

Plaintiffs argue that defendant violated Arizona's Consumer Fraud Act ("the Act") because, during the negotiations, it misled plaintiffs by stating that it was interested in a long-term relationship. The Act prohibits the use of "deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any ma-

---

4. Defendant also argues that plaintiffs' consumer fraud claims do not comply with Federal Rule of Civil Procedure 9(b). In light of this court's ruling on plaintiffs' fraud claims, defendant's arguments are moot.

terial fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale[5] or advertisement of any merchandise[6] ...." Ariz.Rev. Stat. § 44–1522(A) (2004). The Act is intended to "protect unwary buyers from unscrupulous sellers." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir.1992). Contract disputes centered around alleged fraud can fall within the purview of the Act. *See Flower World of Am. v. Wenzel*, 122 Ariz. 319, 594 P.2d 1015, 1017–18 (Ct.App.1979).

■ The JST and JSO agreements are not covered by the Act. Plaintiffs did not purchase any merchandise under the agreements. Plaintiffs were hired as "manufacturer representatives" for defendant's products. (D.I. 1, Ex. A at 3) Agreeing to market such products does not amount to the purchase of merchandise, and does not qualify plaintiffs as buyers under the Act. *See Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir.1992). Therefore, defendant's motion to dismiss plaintiffs' claims under the Act is granted.

## B. Promissory Estoppel

Plaintiffs claim that defendant promised them a long term sales relationship, both before and during the contract term, and,

in reliance on this promise, the plaintiffs invested hundreds of thousands of dollars into developing a market for defendant's products. Defendant asserts that the JST and JSO agreements preclude these claims.

■ From the record the court cannot determine the facts and circumstances surrounding the alleged promises on which plaintiff relied. The court does conclude, however, that plaintiffs established a promissory estoppel claim under Arizona law, which requires a plaintiff to show a defendant made a promise, which the defendant should reasonably foresee would cause the plaintiff to rely, upon which the plaintiff actually relied to its detriment.[7] *See Contempo Constr. Co. v. Mountain States Tel. and Tel. Co.*, 153 Ariz. 279, 736 P.2d 13, 16 (Ct.App.1987). Plaintiffs' complaint alleges each element of this claim: (1) they assert defendant promised them a long term sales relationship; (2) defendant should have known that they would invest more money into the relationship based on their understanding of future profit; (3) plaintiffs lost money because they overinvested in the relationship based on defendant's promises. The court does not agree with defendant that, under Arizona law, a written contract can preclude **any and all** claims of promissory estoppel.[8] Therefore,

---

5. "Sale" is defined as "any sale, offer for sale, or attempt to sell any merchandise ...." Ariz. Rev.Stat. § 44–1521(7) (2004).

6. "Merchandise" includes "any objects, wares, goods, commodities, intangibles, real estate, or services." Ariz.Rev.Stat. § 44–1521(5) (2004).

7. Although the parties rely on Arizona case law in support of their arguments, the court recognizes that there may be choice of law issues with respect to plaintiffs' promissory estoppel and negligent misrepresentation claims. A federal court sitting in diversity jurisdiction must apply the choice of law rules from its forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct.

1020, 85 L.Ed. 1477 (1941). Delaware has adopted Restatement (Second) of Conflict of Laws. *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41, 47 (Del.1991). The court determines that it should apply Arizona law in order to protect the expectations of the parties, who elected to have Arizona law govern their contract, and to ensure uniform adjudication of plaintiffs' claims. *See* Restatement (Second) of Conflict of Laws § 188 comment b.

8. Defendant does not cite any Arizona case law holding that a written contract precludes a claim of promissory estoppel. *Johnson International, Inc. v. City of Phoenix*, 192 Ariz. 466, 967 P.2d 607 (Ct.App.1998), relied on by

defendant's motion to dismiss plaintiffs' promissory estoppel claims is denied.

## D. Negligent Misrepresentation

■ Plaintiffs claim that defendant misrepresented its intent and, as such, defendant is liable for negligent misrepresentation. Arizona recognizes a cause of action, arising under tort law, for negligent misrepresentation. *See, e.g., McAlister v. Citibank*, 171 Ariz. 207, 829 P.2d 1253, 1261 (Ct.App.1992) (citing Restatement (Second) of Torts § 552 (1977)). Restatement (Second) of Torts § 552, as adopted by the Arizona Supreme Court, defines negligent misrepresentation as follows:

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information (2) ... the liability stated in Subsection (1) is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or

knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."

*St. Joseph's Hosp., and Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 742 P.2d 808, 814 (1987) (quoting Restatement (Second) of Torts § 552). One must be a foreseeable user of the information in connection with a commercial transaction before liability can be found. *Id.*

■ Plaintiffs' complaint sufficiently pleads a claim for negligent misrepresentation.[9] Plaintiffs allege that defendant made statements to them in connection with their sales relationship. The complaint states that defendant should have known that it had no intention of maintaining a long term relationship. Plaintiffs contend that defendant should have known that plaintiffs were relying on these misrepresentations because they were investing so much money in developing defendant's market share. Plaintiffs assert that they relied on this information when deciding to invest more than they expected to make in the first year.

■ Defendant argues that plaintiffs cannot bring a tort claim for economic loss.

---

defendant, holds that a promise is an element of a promissory estoppel claim and that the memorandum of understanding by its plain terms was, by itself, not a promise, as the "clear language of the agreement precludes such an interpretation." This court does not interpret the conclusory statement made in *Johnson International, Inc.* that promissory estoppel *is* "a replacement for a contract when parties are unable to reach a mutual agreement" to mean that a written contract will always preclude a promissory estoppel claim. 967 P.2d at 615. The cases cited by the *Johnson International* court, to support this statement, do not hold that a claim for promissory estoppel is precluded by a written agreement.

In addition, *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir.1984), cited by defendant in support of its argument, applies California contract law to a claim of promissory estoppel; therefore, it is hardly instructive on Arizona contract law. *Id.* at 1219.

9. In *McAlister v. Citibank*, 171 Ariz. 207, 829 P.2d 1253 (Ct.App.1992), the court held that "[n]egligent misrepresentation requires a misrepresentation or omission of a fact." *Id.* at 1261. This court's statement that plaintiffs have pled negligent misrepresentation is not a finding that they have pled misrepresentation of a fact; the court withholds judgment on this element until further development of the record.

Arizona recognizes the "economic loss" doctrine with respect to contracts for the sale of goods. *See e.g., Apollo Group, Inc. v. Avnet, Inc.,* 58 F.3d 477, 480 (9th Cir. 1995) (applying the economic loss doctrine to contracts covered by the UCC); *Carstens v. City of Phoenix,* 206 Ariz. 123, 75 P.3d 1081, 1083–84 (Ct.App.2003) (applying economic loss doctrine to a contract for real property). Under this doctrine, a plaintiff cannot bring a tort claim for economic damages when the parties had an enforceable contract. *Apollo Group, Inc.,* 58 F.3d at 479. The rationale is that contract remedies are adequate to compensate a plaintiff for its economic loss. *Id.* The agreement at issue in this case, however, is one for services; thus, the UCC does not apply.

Furthermore, plaintiffs' claims for negligent misrepresentation are not in conflict with the parties' contract. The contract states that it has a term of one year and can be renewed in writing upon agreement of the parties. Plaintiffs do not argue that defendant represented to them that the contract would last more than a year, but that defendant would agree to renew the contract when the year was up. Therefore, plaintiffs' claim would not be covered by the contract and they could not bring it in a contract action.[10]

### E. Punitive Damages

■ Plaintiffs claim punitive damages for defendant's alleged breach of the implied covenant of good faith and fair dealing ("implied covenant").[11] Defendant argues that § 3.8 of the JST and JSO agreements prevents plaintiffs from obtaining punitive damages.[12] Pursuant to Arizona law, a plaintiff claiming breach of an implied covenant is limited to an action brought under the contract at issue. *See Sutter Home Winery, Inc.,* 971 F.2d at 408. However, if a special relationship exists between the contracting parties, then a plaintiff may bring a tort action. *See Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986). There are two situations which give rise to a special relationship: (1) " 'the type of contract involved is one in which the plaintiff seeks something more than commercial advantage or profit from defendant;' " or (2) "restricting recovery to contract damages would 'provide[ ] more of an incentive for breach of contract than for its performance.' " *Sutter Home Winery, Inc.,* 971 F.2d at 408 (quoting *Rawlings,* 726 P.2d at 575, 576).

■ Neither situation is present in this case. It is undisputed that the parties, both of which are corporate entities, entered into the contract seeking profits.

---

10. For this same reason, the court rejects defendant's arguments regarding the parol evidence rule. *See Spudnuts, Inc. v. Lane,* 131 Ariz. 424, 641 P.2d 912, 914–15 (Ct.App.1982) (stating that "statements which are squarely against the terms of the written agreement are inadmissible under the parol evidence rule").

11. Plaintiffs also claim punitive damages for defendant's alleged violation of the Act, however, in light of the court's holding that the Act does not apply to plaintiffs, this claim is moot.

12. Section 3.8 states:

Limitation on Liability. IN NO EVENT, WHETHER FOR BREACH OF CON-TRACT, WARRANTY, MOTOROLA'S NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE WILL MOTOROLA BE LIABLE FOR INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, FRUSTRATION OF ECONOMIC OR BUSINESS EXPECTATIONS, LOSS OF PROFITS, LOSS OF DATA, COST OF CAPITAL, COST OF SUBSTITUTION OF PRODUCTS, FACILITIES OR SERVICES, DOWNTIME, COSTS, OR ANY SIMILAR CLAIM OF A SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE NATURE WHATSOEVER TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

(D.I. 1, Ex. A at 7)

"There is also no reason to believe that restricting a distributor's recovery [for breach of an implied covenant] to contract damages would encourage suppliers to routinely breach distributor agreements." *Sutter Home Winery, Inc.*, 971 F.2d at 408. Therefore, plaintiffs' claims for punitive damages resulting from defendant's alleged breach of the implied covenant are dismissed, as § 3.8 precludes claims for punitive damages under the JST and JSO agreements.

## V.  CONCLUSION

For the reasons stated, defendant's motion to dismiss (D.I.10) is denied in part and granted in part.  It is granted as to plaintiffs' claims under the Arizona Consumer Fraud Act [13] and claims for punitive damages.  It is denied as to plaintiffs' claims of equitable estoppel and negligent misrepresentation.  An order consistent with this memorandum opinion shall issue.

---

**13.** Defendant challenged plaintiffs' complaints of fraud under Fed. R. Civ. Proc. 9(b); however, this argument is moot in light of the court's holdings.